[S. F. No. 9452. In Bank.—February 2, 1922.]

In the Matter of the Estate of MELISSA AMELIA POTTER, Deceased. JESSE S. L. POTTER, etc., Appellant, v. JOHN S. CHAMBERS, as Controller, etc., Respondent.

[1] INHERITANCE TAX—GIFTS—ENJOYMENT AFTER DEATH OF DONOR—ACT OF 1905.—The fact that a gift of property is intended to take effect in "enjoyment" after the death of the donor is sufficient to make it taxable under the inheritance tax law of 1905 (Stats. 1905, p. 341.)

[2] ID.—TAX ON TRANSFER OR RIGHT TO TRANSFER—LAW APPLICABLE. It is settled law that an inheritance tax is levied on the transfer of title, or on an exercise of the right to transfer the title, including the right of the transferee to receive it, and not on the property itself; and that while the provisions imposing the tax on prior transfers in contemplation of death or with intent that they take effect in enjoyment at death are but safeguards against attempts to evade the tax, the recipient of a present transfer of that character is bound only for the inheritance tax due upon it under the law in force at the time the title passes, and the legislature has no power to raise the rate or increase the tax on such transfer by a subsequent act.

[3] STATUTES — POWER OF LEGISLATURE — CONSTITUTIONAL LAW. — The legislature cannot change a rule established by constitutional provisions.

---

1. Succession tax upon gift in contemplation of death, notes, 7 A. L. R. 1028; 18 L. R. A. (N. S.) 458; 46 L. R. A. (N. S.) 790.

Constitutionality, construction and effect of legislative definition of gift or transfer in contemplation of death, note, 4 A. L. R. 1523.

[4] INHERITANCE TAX—GIFTS—ENJOYMENT AFTER DEATH OF DONOR—
INTEREST OF STATE IN PROPERTY.—The Inheritance Tax Act of
1905 does not create in the state, during the life of the donor,
an interest in property given *inter vivos* in contemplation of death,
or with the intent that it shall take possession or enjoyment after
death, but merely gives the state a lien upon the property, not for
any tax afterward imposed by subsequent acts, but for the tax
imposed by that act.

[5] ID.—VESTING OF TAX.—The right to an inheritance tax vests in the
state at the date of the taxable transfer, and the legislature can-
not by subsequent acts reduce the rate of taxation thereon, since
to do so would be to make a gift of the property of the state
to the extent of the reduction, contrary to section 31, article IV,
of the constitution.

[6] ID. — POWER OF LEGISLATURE — SUCCESSION TAX — ACT OF 1915. —
The legislature had the power by the act of 1915 (Stats. 1915,
p. 418) to impose a succession tax of twelve per cent upon all
inheritances or successions that might occur after its passage,
regardless of the value and without any exemption.

[7] ID.—RIGHT OF INHERITANCE—TESTAMENTARY DISPOSITION—NATURE
OF RIGHT—LEGISLATIVE CONTROL.—The so-called right of inheritance
and also the right of testamentary disposition are not inherent
rights of the individual, nor are they safeguarded or secured *in
futuro* by any provision of the constitution. They are both sub-
ject to legislative control and creatures of legislative will. Con-
sequently, the legislature has the power to take away both rights
and to make the state the successor to all property upon the death
of the owner. The right and power to impose a succession tax
rests on this principle.

[8] TAXATION — POWER OF — STATUTORY CONSTRUCTION. — Authority
to impose and collect taxes upon the person or upon the property
of an individual for public purpose must find an express statutory
warrant, and all laws having this object are to be construed
strictly in favor of the individual as against the state.

[9] STATUTORY CONSTRUCTION—RETROACTIVE EFFECT—INTENT.—A stat-
ute is not to be construed so as to have a retroactive effect unless
the intent that it is to be retroactive clearly appears from the
statute itself.

[10] ID.—INTENT OF LEGISLATURE—VALIDITY OF ACT.—The courts will
never, if it can be avoided, impute to the legislature an intent to
enact a law that is contrary to the constitution.

[11] INHERITANCE TAX — STATUTE OF 1915 — CONSTRUCTION. — The in-
heritance Tax Act of 1915 (Stats. 1915, p. 418) is not retroactive
in effect, and was not so intended, and section 2 of the act does
not, by implication or otherwise, refer to or affect a gift which
vested prior to its passage, or authorize the value thereof to be
added to the value of a legacy vesting thereafter for the purpose
of boosting the latter into a higher tax rating value.

[12] STATUTORY CONSTRUCTION — ADOPTION OF STATUTE FROM OTHER STATE OR COUNTRY.—Where a statute is adopted from another state or country and such statute has previously been construed by the courts of such state or country, the statute is deemed, as a general rule, to have been adopted with the construction so given.

[13] INHERITANCE TAX — ACT OF 1917 — NOT RETROACTIVE. — The Inheritance Tax Act of 1917 (Stats. 1917, p. 880) cannot be given a retroactive effect upon transfers vested prior to its passage, so as to increase the tax thereon. Attempt to do so would be void.

[14] ID.—GIFT—PRESENT VESTING OF TITLE—POSTPONEMENT OF ENJOYMENT UNTIL DEATH OF DONOR—METHOD OF ASCERTAINING RATE OF TAX—EXEMPTION.—In a case where a gift from a parent to a child, made in 1908, vests the title to and possession of the property at that date, but is made with the intent that it should not take effect in possession or enjoyment until after the death of the parent, so that neither the tax rate thereon nor the amount of the exemption from such tax can be afterward changed by the legislature, and thereafter and before the death of the parent the law in force at the date of such gift is amended by changing both the tax rate and the amount exempted from the tax, and upon the death of such parent such child succeeds to other property, the value of the parcel of property transferred by the gift and the value of the parcel transferred at death cannot be combined for the purpose of ascertaining the rate chargeable upon the property left to the child at the death, but the rate thereon is to be calculated and the exemption therefrom allowed solely upon the value of the property vesting in the child at the death of the parent, without adding the value of the previous gift. In such cases the two transfers are to be treated as separate taxable units having no relation to each other.

[15] STATUTES—REPEAL AND ENACTMENT—STATUTORY CONSTRUCTION.— The rule that if a part of a statute is amended such part is not to be considered as repealed and re-enacted, but the portions which are not altered are to be considered as having been the law from the time they were enacted, has, under some circumstances, been extended so as to apply to a case where the new statute expressly repeals the whole of the former statute, and applies in all proper cases, but, like all other rules of statutory construction, is subject to the controlling principle that the object and purpose of all interpretation is to arrive at the intent of the legislature.

[16] INHERITANCE TAX—STATUTES OF 1905 AND 1913—CONSTRUCTION.— It cannot be reasonably held that the legislature intended the provisions of the act of 1913 (Stats. 1913, p. 1066) should be

13. Prospective or retroactive operation of inheritance tax acts, notes, 2 Ann. Cas. 608; 8 Ann. Cas. 218.

considered as re-enacting those of 1905 (Stats. 1905, p. 341), in a case in which there was a gift *inter vivos* in 1908 and a bequest in 1916 by the testator to the same party, where the result of such assumed re-enactment would be that the aggregate amount of the gift and bequest in excess of five hundred thousand dollars would be divided into two parts, one of which would be taxed at the rate of three per cent, as provided in the act of 1905, and the other part at the rate of twelve per cent fixed by the act of 1915 upon the excess over five hundred thousand dollars.

APPEAL from an order of the Superior Court of the City and County of San Francisco, fixing amount of inheritance tax. John T. Nourse and Frank H. Dunne, Judges. Reversed.

The facts are stated in the opinion of the court.

Charles W. Kitts, Mountford S. Wilson and Charles H. Lovell for Appellant.

Garret W. McEnerney, *Amicus Curiae.*

Robert A. Waring, H. C. Lucas and James L. Atteridge for Respondent.

SHAW, C. J.—Jesse S. L. Potter, a son of the deceased, Melissa A. Potter, appeals from an order of the superior court fixing the amount due from him under the inheritance tax law, upon the property received by him under the will of the decedent and upon certain property transferred to him by the decedent prior to her death. The case involves the question of the rates of computation of inheritance tax upon the valuations of the property given at the death of the decedent and that given prior to her death, respectively.

Melissa A. Potter died testate on November 30, 1916. By her will she gave to Jesse S. L. Potter, and he has received it, property of the value of $146,773.57. On October 22, 1908, she transferred to him certain other property, without any valuable consideration therefor, which at that date and also at the time of her death was of the value of $850,300. The parties stipulated in the lower court that ever since said transfer said Jesse S. L. Potter has been the owner and in possession of said property; that he had, up to the time of her death, collected and delivered to her all the income there-

from, and that the property was liable to taxation under the inheritance tax law of 1905. (Sec. 1, Stats. 1905, p. 341.)

The cause was submitted upon this stipulation and thereupon the court below found or concluded that the gift was "intended to take effect in possession and enjoyment after her death and was made in contemplation of death," within the meaning of the inheritance tax law.

This finding or conclusion is not sustained by the stipulation on which it was based, except so far as it declares that the gift was intended to take effect in "enjoyment" after death. The stipulation states that he immediately took and ever afterward held the possession; it says nothing whatever that raises the inference that it was made "in contemplation of death," and it implies that possession was to be taken at once by the donee. (*Carpentier* v. *Small*, 35 Cal. 346.) [1] However, the fact that it was intended to take effect in "enjoyment" after her death is sufficient to make it taxable under the law of 1905, then in force, so the error is not important on the subject of its liability to taxation at the time it was made.

The transfer of October, 1908, immediately passed to Jesse S. L. Potter the title to the property as of that date. [2] It is settled law that the tax is levied on the transfer of title, or on the exercise of the right to transfer the title, including, of course, the right of the transferee to receive it, and not on the property itself, and that while the provisions imposing the tax on prior transfers in contemplation of death or with intent that they take effect in enjoyment at death are but safeguards against attempts to evade the tax, the recipient of a present transfer of that character is bound only for the inheritance tax due upon it under the law in force at the time the title passes, and the legislature has no power to raise the rate or increase the tax on such transfer by a subsequent act. (*Hunt* v. *Wicht*, 174 Cal. 205 [L. R. A. 1917C, 961, 162 Pac. 639]; *Estate of Felton*, 176 Cal. 663 [169 Pac. 392]; *Estate of Gurnsey*, 177 Cal. 214 [170 Pac. 402]; *Nickel* v. *State*, 179 Cal. 128 [175 Pac. 641]; *Estate of Brix*, 181 Cal. 671, 672 [186 Pac. 135]; *Estate of Murphy*, 182 Cal. 746 [190 Pac. 46]; *Estate of Miller*, 184 Cal. 674 [16 A. L. R. 694, 195 Pac. 413]; *Chambers* v. *Gibb*, 186 Cal. 196 [198 Pac. 1032]; *Chambers* v. *Lamb*, 186 Cal. 261 [199 Pac. 33].)

Counsel for the respondent make an elaborate argument the purpose of which seems to be to induce this court to overrule these decisions or in some way to qualify the rule just stated, or to convince the court that the legislature has done so. [3] We are of the opinion that the decisions are sound and should be adhered to and that the legislature cannot change a rule established by constitutional provisions. We see no force in the argument that the present case can be differentiated from *Hunt* v. *Wicht, supra,* on the ground that the transfer involved in that case was made prior to the enactment of the act of 1905, while the transfer here involved was made subsequent thereto, and that since that act imposed a tax on that transfer, it is competent for the legislature to increase the rate by a subsequent law. This theory is based on the proposition that under the act of 1905 there became vested in the state an interest in the property transferred to the extent necessary to enable it to afterward impose thereon a succession tax greater than was imposed by that act. [4] This would be doubtful, at best, in any event, but it is based on the untenable premise that the act of 1905 creates in the state, during the life of the donor, an interest in property given *inter vivos* in contemplation of death, or with the intent that it shall take possession or enjoyment after death. The act has no such effect; it merely gives the state a lien upon the property, not for any tax afterward imposed by subsequent acts, but for the tax imposed by that act.

[5] It is also settled that the right to such tax vests in the state at the date of the taxable transfer, and that the legislature cannot by subsequent acts reduce the rate of taxation thereon, since to do so would be to make a gift of the property of the state to the extent of the reduction, contrary to section 31, article IV, of the constitution. (*Estate of Stanford,* 126 Cal. 118 [45 L. R. A. 788, 54 Pac. 259, 58 Pac. 462]; *Trippet* v. *State,* 149 Cal. 521 [8 L. R. A. (N. S.) 1210, 86 Pac. 1084]; *Estate of Woodard,* 153 Cal. 39 [94 Pac. 242]; *Estate of Martin,* 153 Cal. 227 [94 Pac. 1053]; *Estate of Kennedy,* 157 Cal. 527 [29 L. R. A. (N. S.) 428, 108 Pac. 280]; *Estate of Rossi,* 169 Cal. 149 [146 Pac. 430].) These were all cases where the title to the property vested in the successor, and the right to tax vested in the state at the death of the ancestor, but on this point no distinction can

be made between such cases and those where the rights to
the property and to the tax, respectively, vest on the passing
of the title by gift in the lifetime of the ancestor. The fact
that the collection of the tax is postponed, in the latter class
of cases until the death of the ancestor, cannot affect the
question of the vested right of the state thereto.

The result of these two propositions is that the right of the
state to the tax on the property given to Jesse S. L. Potter
in 1908, and the liability of Potter for such tax, were alike
irrevocably fixed as of that date subject to the condition
stated in the act of 1905 (sec. 7) ; that is to say, it was not
to become payable until the death of the donor, but that,
under section 1 of that act, the tax became a lien on the
property at the time the gift was made, and so remained
until the tax was paid. The act declared that if the person
chargeable with the tax was an adult child of the decedent
a part of the property transferred "of the clear value" of
$4,000 should be exempt from the tax imposed by the act
(sec. 4). Potter, an adult son, was entitled to this exemp-
tion. His liability, as fixed at the time of the transfer, was
a liability to pay a tax measured by the value of the prop-
erty given to him, less the $4,000 declared to be exempt,
the tax on the remainder to be computed at the rates fixed
by the act of 1905. These were the rights and liabilities
vested and fixed by the law in force in 1908, and the legis-
lature could not, by subsequent enactment, change them or
either of them.

The legislature afterward amended the law on the subject
of inheritance taxes. A complete revision was enacted in
1911. (Stats. 1911, p. 713.) This act repealed all prior
acts, but provided that rights of the state, and pending pro-
ceedings, under such prior acts, should not be affected
thereby. Another complete revision was enacted in 1913.
(Stats. 1913, p. 1066.) This act also repealed prior acts,
including that of 1911 and amendments thereto, and re-
served the rights of the state under any prior act. Sections
1, 5, 6, 7, 9, and 14 of this act were amended in 1915 (Stats.
1915, pp. 418, 435), and an inheritance tax department to be
maintained and directed by the controller was established.
(Stats. 1915, p. 430.) It was the law as thus amended that
was in force in 1916 at the date of the death of Melissa A.
Potter.

The taxes on the gift of 1908 at the value fixed by the court below, if computed upon the rates and exemption fixed by the act of 1905, amounted to $22,094. The act of 1915 gave an adult son an exemption of $10,000. The court below was of the opinion that this exemption was applicable to the gift of 1908, and deducted that sum therefrom. This reduced the tax on that gift to $22,034, a decrease of $60 from the correct amount. In this respect the court erred against the respondent.

In computing the tax on the value of the property received by Potter from his mother at her death in 1916, $146,773.57, the court below allowed no deduction for exemption, being of the opinion that the exemption of $10,000 allowed under the amendment of 1915 was the total exemption allowed both on the gift of 1908 and the subsequent legacy. It was of the opinion, moreover, that for the purposes of ascertaining the rate of taxation on the legacy its value should be added to the value of the previous gift, and that the rate on the legacy should be ascertained upon the theory that it was included in the portion of the combined total in excess of $500,000, the rate upon which portion, by the amendment of 1915, was fixed at twelve per cent. Upon this theory it fixed the tax on that legacy at $17,612.83.

The appellant contends that this theory is erroneous, that the $10,000 exemption of 1915 is to be deducted from the value of the legacy, and that the rates of 1915 are to be computed on the balance in the same manner as if there had been no gift received in 1908, since the entire estate which vested in the son in 1916 was the $146,773.57 included in said legacy. By the rate of 1915 the tax thereon, so computed, would be $5,924.15.

The controller contends that the $850,300 given in 1908 is to be added to the $146,773.57 received in 1916, making a total sum of $997,073.57, and that the rate on the final $497,073.57 thereof is the rate chargeable on the $146,773.57 composing the legacy. These conflicting theories present the main question for decision.

Section 5 of the act, as amended by the law of 1915, fixes the rate on estates of $25,000 or less, given to a child of the decedent, at one per centum of the clear value of the property such child receives. The language is the same as that of the act of 1905, and under the rule stated in *Estate of*

*Timken,* 158 Cal. 51 [109 Pac. 608], that rate is to be computed only on the amount of the difference between the exemption and the sum of $25,000, where the value of the property received equals or exceeds the latter sum. Section 6 of the act of 1915 fixes the rates on the excess over $25,000 of the property received by the particular person, as follows: (a) On all over $25,000 up to $50,000, two per cent; (b) over $50,000 up to $100,000, four per cent; (c) over $100,000 up to $200,000, seven per cent; (d) over $200,000 up to $500,000, ten per cent; (e) over $500,000 up to $1,000,000, twelve per cent. It will be observed that under the theory of the controller the $146,773.57 is to be considered as the last part of the combined sum of the gift of 1908 and legacy of 1916, and the two are to be taxed together as a single transfer, or as two transfers made at the same time, in which case it would come within the excess over $500,000 and under $1,000,000.

[6] It must be conceded at the outset of the inquiry that the legislature had power by the act of 1915 to impose a succession tax of twelve per cent upon all inheritances or successions that might occur after its passage, regardless of the value and without any exemption. [7] The so-called right of inheritance and also the right of testamentary disposition are not inherent rights of the individual, nor are they safeguarded or secured *in futuro* by any provision of our constitution. They are both subject to legislative control and are creatures of legislative will. Consequently, the legislature has the power to take away both rights and to make the state the successor to all property upon the death of the owner. The right and power to impose a succession tax rests on this principle.

It must be remembered, however, that the legislature has not, by the inheritance tax law, attempted to impose a tax on any ordinary disposition of property *inter vivos*. The sole reason for mentioning dispositions *inter vivos* made without adequate consideration is to prevent the evasion of the tax imposed on inheritances, bequests and devises by such dispositions. In contemplation of that law, the gifts *inter vivos* therein mentioned are all presumed to have been made with the intent to evade the tax imposed on transfers taking effect by succession at death.

The question for consideration, therefore, is whether or not the law in force in 1916, when Mrs. Potter died, does expressly or by reasonable construction or implication provide that in computing the tax on the $146,773.57, received by appellant at her death, the $850,300, given to him in 1908, shall be added to the $146,773.57, for the purpose of subjecting the $146,773.57 to the rate of taxation imposed on that part of a succession which exceeds $500,000 in value, so that it shall all be taxed at twelve per cent, instead of being subjected to a tax computed at the graduated rates set forth for property not exceeding $200,000 in value.

It is proper to first state the established rules of statutory construction applicable to the case. [8] It is said that authority to impose and collect taxes upon the person or upon the property of an individual for public purpose "must find an express statutory warrant, and all laws having this object are to be construed strictly in favor of the individual as against the state. Whether his property is to be taken by seizure or by suit, the rule is the same. In the one case the officer must show his warrant for the seizure, and in the other the plaintiff must establish every fact essential to the maintenance to his right of recovery." (*Merced Co.* v. *Helm,* 102 Cal. 165 [36 Pac. 399]; approved in *Hellman* v. *Los Angeles,* 147 Cal. 657 [82 Pac. 313], and *Connelly* v. *San Francisco,* 164 Cal. 106 [127 Pac. 834].) "All tax laws are construed rigidly, and must be closely followed, in order to divest or vest title." (*Bensley* v. *Mountain etc. Co.,* 13 Cal. 316 [73 Am. Dec. 575].) "Laws imposing taxes are strictly construed, and doubts are resolved in favor of the taxpayer. . . . Duties are never imposed upon a citizen upon vague or doubtful interpretations." (Lewis' Sutherland on Statutory Construction, sec. 537, formerly sec. 363.) The notes show that the courts of Michigan, Connecticut, and Idaho have made statements not entirely consistent with the rule of the text, but that it is uniformly followed in other jurisdictions. Mr. Cooley states the doctrine thus: "Strict construction is the general rule in the case of statutes which may divest one of his freehold by proceedings not in the ordinary sense judicial, and to which he is only an enforced party. It is thought to be only reasonable to intend that the legislature in making provisions for such proceedings would take unusual care to

make use of terms which would plainly express its meaning, in order that ministerial officers might not be left in doubt in the exercise of unusual powers, and that the citizen might know exactly what were his duties and liabilities. A strict construction in such cases seems reasonable, because presumptively the legislature has given in plain terms all the power it has intended to be exercised.'' (1 Cooley on Taxation, p. 453.) This rule is, of course, to be applied only where some ambiguity exists or doubt arises from the language used as to the meaning intended. ''Beyond the words employed, if the meaning is plain and intelligible, neither officer or court is to go in search of the legislative intent.'' (Ibid., 450.)

[9] It is also an established rule that a statute is not to be construed so as to have a retroactive effect unless the intent that it is to be retroactive clearly appears from the statute itself. The rule is expressly declared in section 3 of each of our codes. ''The statute should not be given a retrospective effect unless the language demands such a construction.'' (*Chambers* v. *Gibb*, 186 Cal. 196 [198 Pac. 1032].) All the decisions are to the same effect. (8 Kerr's Dig., p. 8496, title ''Statutes,'' sec. 101.)

[10] Another rule of interpretation that is important to this case is that the courts will never, if it can be avoided, impute to the legislature an intent to enact a law that is contrary to the constitution. ''If a particular construction has the effect to declare the act or any part of it unconstitutional, such construction must be avoided, when it can be fairly done, for the legal presumption is that the legislature could not have so intended. . . . If the language upon its face is ambiguous and susceptible of different constructions, it may be forced, so to speak, to the extent of adopting the less obvious construction, in order to uphold the law.'' (*French* v. *Teschemaker*, 24 Cal. 554. See, also, *Bates* v. *Gregory*, 89 Cal. 394 [26 Pac. 891]; *People* v. *Frisbie*, 26 Cal. 139; *Bacon* v. *Bacon*, 150 Cal. 486 [89 Pac. 317]; and *Chesebrough* v. *San Francisco*, 153 Cal. 568 [96 Pac. 288].)

The respondent relies on section 2 of the act. The parts of this section material to the case are as follows:

''A tax shall be and is hereby imposed upon the transfer of any property . . . to persons, institutions or corporations, . . . in the following cases:

188 Cal.—5

"(1) When the transfer is by will, descent or succession from a resident of the state; (2) When the succession comes from a nonresident, but is of property within the state.

"(3) When the transfer is of property . . . within this state, by deed, grant, bargain, sale, assignment or gift, made without valuable and adequate consideration in contemplation of the death of the grantor, vendor, assignor or donor, or intended to take effect in possession or enjoyment at or after such death. When such person, institution or corporation becomes beneficially entitled in possession or expectancy to any property or the income therefrom, by any such transfer, *whether made before or after the passage of this act.*"

It is claimed that the italicized clause of the last sentence shows the legislative intent to impose a tax on previous transfers, so far as lawfully possible, and that it supports the contention that in computing the tax on the value of the transfer of 1916, the value of the transfer of 1908 is to be added to it and the rates of the 1915 act extended on the whole sum to find the tax on the transfer of 1916 so as to treat it as a transfer exceeding $500,000 in value. It may be remarked that the insertion of a period instead of a comma, preceding the word "when" and so dividing subdivision 3 into two distinct sentences, as above shown, is obviously a typographical or clerical mistake and that it should be read as if the comma were inserted. This does not change the effect, but it makes the meaning clearer.

We have seen that the legislature had no power to add to or take from the tax upon the gift of 1908 after it was made. If taken literally and apart from its immediate context, the clause above italicized would express the intent to do so, but the result would be that under the rule established by *Hunt* v. *Wicht*, and the other cases first above cited the act would be to that extent unconstitutional and void. Such a result, as we have seen, is to be avoided, when it can be fairly done. We must, therefore, look to the context to ascertain if a meaning is apparent that would produce a result that does not make the subdivision retroactive in effect and brings it within the scope of the legislative power. The first part of this final sentence or clause, in connection with the opening part of the subdivision, states that such transfer tax is to be imposed "when such person,

institution or corporation *becomes* beneficially entitled in possession or expectancy to any property." In a very common acceptation of its meaning the word "becomes" betokens futurity; something that is yet to happen. The right of the state to the tax is not to vest until the person to be charged therewith "becomes beneficially *entitled*" to the property. This evidently refers to some time after the passage of the act, and in view of the fact that it would be void if it referred to a past vesting of title, it must be presumed that it was intended to refer to a future vesting of title in possession or expectancy. This would make it inconsistent with the literal meaning of the last clause unless we find that there may be a vesting of title, a becoming *entitled*, after the passage of the act, which vesting arises from a "deed, grant, bargain, sale, assignment or gift" executed before the passage of the act whereby the words may have literal effect upon transfers vesting in future. It is obvious that the phrase "such transfer" in the last clause refers back to these methods of transfer, and that the clause is to be understood as if it read: "by any such deed, grant, bargain, sale, assignment or gift, whether made before or after the passage of this act."

"A future interest is either: 1. Vested; or, 2. Contingent." (Civ. Code, sec. 693.) "A future interest is vested when there is a person in being who would have a right, defeasible or indefeasible, to the immediate possession of the property, upon the ceasing of the intermediate or precedent interest." (Civ. Code, sec. 694.) "A future interest is contingent, whilst the person in whom, or the event upon which, it is limited to take effect remains uncertain." (Civ. Code, sec. 695.) It is competent for the legislature to impose a tax upon any transfer of this character, where the property passing by transfer does not become vested under it until after the act imposing the tax is enacted. Transfers are often made under these sections by some instrument in writing, whereby contingent interests are created to pass in the future and which do not become vested until years after the execution of the instrument. Transfers of this character were considered in *Estate of Rogers,* 94 Cal. 530 [29 Pac. 962], *Estate of Winter,* 114 Cal. 186 [45 Pac. 1063], *Estate of Blake,* 157 Cal. 460 [108 Pac. 287], *Estate of Carothers,* 161 Cal. 588 [119 Pac. 926], *Taylor* v. *McCowen,* 154 Cal. 804

[99 Pac. 351], *Hall* v. *Wright,* 17 Cal. App. 504 [120 Pac. 429], and *Estate of Washburn,* 11 Cal. App. 740 [106 Pac. 415]. Bearing in mind the aforesaid constitutional limitations upon legislative power, we may easily see that the phrase ''becomes beneficially entitled in possession or expectancy'' was intended to include, among others, estates or interests of this character where the instrument creating them was made before the passage of the act and the contingent title thereby provided for should not become vested until after its passage. With this possibility in mind, we see at once the occasion and purpose of the insertion of the clause ''whether made before or after the passage of this act.'' It was intended to make it clearly include instruments of transfer of this character. Thus all the words of the section may have a clear practical effect in full harmony with the constitution. This, we think, must be held to be its true meaning. [11] The result is that it is not retroactive in effect, that it was not so intended, and that this section does not, by implication or otherwise, refer to or affect the gift which vested in 1908, or authorize the value thereof to be added to the value of the legacy of 1916 for the purpose of boosting the latter into a higher tax rating value.

Another consideration confirms this conclusion. [12] ''When a statute is adopted from another state or country and such statute has previously been construed by the courts of such state or country, the statute is deemed, as a general rule, to have been adopted with the construction so given to it.'' (Lewis' Sutherland on Statutory Construction, 2d ed., sec. 404; *Silva* v. *Campbell,* 84 Cal. 420–424 [24 Pac. 316].) Section 2 of the law was first enacted in this state in 1911. (Stats. 1911, p. 713, sec. 1.) Subsequent acts have reenacted it without change, except as to the number. The language is taken from section 1 of the New York Taxable Transfer Act of 1892 (Laws 1892, c. 399), of which it is substantially a literal copy. The court of appeals of that state, in *Matter of Curtis,* 142 N. Y. 219 [36 N. E. 887], decided in 1894, considered a case where an estate in remainder had been left to one Racey upon condition that he should survive his aunt or should die leaving issue, failing which it passed to persons exempted from the tax. He died without issue and therefore never became vested of any estate in the property.

He left other property and an attempt was made to hold his estate liable for the inheritance tax upon the value of the remainder so left to him. It was held that this could not be done, the court saying that he took no beneficial estate, that his estate could take nothing, and that to compel payment of the tax by the estate was a thing too unjust to be tolerated. This case came under a previous tax law of that state, that of 1885. (Laws 1885, c. 483). A year later the court considered a case where a tax was claimed under the act of 1892, upon an estate in remainder which had become vested in interest in 1876, before there was any inheritance tax law, but which did not vest in possession or enjoyment until 1894. The court held that the words of the act of 1892, from which our section 2 aforesaid is copied, could not lawfully be given a retroactive effect so as to apply to an estate which vested prior to its passage, that they "have their full and natural force when applied to . . . grants and gifts *causa mortis*," made prior to the act, but not passing a vested title until afterward, and that the remainder vested in 1876 was not taxable under the act. (*Matter of Seaman*, 147 N. Y. 69 [41 N. E. 401].) As was said in *Silva* v. *Campbell, supra,* referring to a part of section 1161 of the Code of Civil Procedure, which had been taken literally from the statutes of New York, "we presume that subdivision 1, *supra,* was enacted in this state with an understanding of the construction which had been placed upon it in the state from which it was taken." The same presumption applies here. The act must be understood to have the same meaning that at the time of its passage here had already been given to its language by the courts of New York.

Other parts of the act of 1911, re-enacted in 1913, and again in 1915, show that the legislature understood that this interpretation of this language in subdivision 3 aforesaid had been made in New York and that provision was made for the application thereof. Section 9 of the act provides that when the transfer to be taxed consists of an estate in expectancy "the entire property or fund by which such estate" is supported shall be appraised immediately after the death of the decedent and the market value thereof determined; that the person chargeable with the tax may elect

not to pay it until he shall come into actual possession or enjoyment of such property, in which case he must give bond to secure such payment, and renew the same every five years thereafter until he comes into such possession and enjoyment. (Subd. a.)

Subdivision d reads as follows: "Estates in expectancy which are contingent or defeasible and in which proceedings for the determination of the tax have not been taken or where the taxation thereof has been held in abeyance, shall be appraised at their full, undiminished value when the persons entitled thereto shall come into the beneficial enjoyment or possession thereof, without diminution for or on account of any valuation theretofore made of the particular estates for purposes of taxation, upon which said estates in expectancy may have been limited."

It is plain from this provision in connection with those of subdivision a aforesaid, that subdivision d was intended to provide for the taxation of estates in expectancy which had been created by instruments of conveyance, executed before the death of the decedent, but which did not become vested in the donee or grantee or person beneficially interested until some time subsequent to such death, as suggested in *Matter of Seaman, supra.* Thus the reference in section 2 to gifts made either "before or after the passage of this act" are shown to be effective upon the estates mentioned in subdivision d aforesaid, and to have 'been intended to refer thereto. No occasion, therefore, arises for giving the act a retrospective effect.

It is also to be noted that the statute that was in force in 1916 contains nothing expressly declaring that in computing the tax due upon a transfer by gift which had completely vested before the death of the donor, the value of that property is to be added to the value of property received by descent, devise, or bequest at the death of the donor and the sum of the two taxed at the same rate as if they had constituted a single transfer. Provision is made for the appraisement of the property of the decedent immediately after the death of the decedent for the taxation of all ordinary transfers of present vested interests taxable under the act. (Secs. 16 and 17.) In *Chambers* v. *Lamb,* 186 Cal. 261 [199 Pac. 33], where there was a gift *inter*

*vivos* which passed a present title at its execution, and taxable under the act of 1905, we held that the property must be appraised at its value as of the time the title vested, and not at the value as of the time of the death of the deceased donor. The subsequent act could not change or affect this rule so as to require the value to be fixed as of the time of the death, for if it purported to do so and could have that effect, it would either add to or take from the vested right of the state to the tax, according to whether the value had increased or diminished in the meantime, and correspondingly diminish or increase the liability of the donee therefor, neither of which can be done, under the authorities already cited on that point. It is obvious, in view of the rules of statutory construction hereinbefore stated, that the above provisions cannot be taken to require the value of the gift of 1908 to be fixed according to its value in 1916. Likewise it is clear that the language does not indicate an intent to declare that for the 'purpose of taxing the property received at the death of Mrs. Potter in 1916 it shall be raised into the class above $500,000 in value in order to tax it at twelve per cent on the whole thereof.

[13] The only statute which purports to authorize such a combination of values for computing the tax is the act of 1917. (Stats. 1917, p. 880.) Section 2 of that act declares that when, "either before or after the passage of this act " more than one transfer has been made by a decedent to one person, the tax shall be imposed upon the aggregate market value of all such transfers as if the property had passed by one transfer. (Subd. 9.) This act cannot be given a retroactive effect upon transfers vested in 1916, so as to increase the tax thereon. Any attempt to do so would, of course, be void.

The method of computation contended for by counsel for the controller would in many cases result in a discrimination between persons similarly situated in point of law. For illustration, assume that in the present case Mrs. Potter had died possessed of an estate worth $300,000 which had descended in equal shares to two sons, the appellant and a brother, the latter having received no gift from the mother in her lifetime. By the rates in force at her death, the brother would be taxed in the sum of $6,150 for his moiety. But the appellant, having received a gift in 1908 of the

value of $800,000 which could only be taxed at the rates fixed in 1905, which tax he had paid, would be compelled to pay a tax of twelve per cent on his half of the estate, amounting to $18,000, on a transfer of the same value as that upon which his brother had paid only $6,150. This would seem to put the legislature in the position of attempting to do indirectly what it could not do directly; that is, to increase the burden of his tax on his share of the estate and discriminate between him and his brother in that respect, solely upon the ground that he had received a prior gift taxed at a lower rate, which the state was unable to increase by the subsequent statute. A construction imputing to the state a design so indicative of resentment or regret should not be adopted. Such meaning, if intended by the legislature, should be clearly expressed in the statute.

Another reason for rejecting the method of combining the two values in computing the tax arises from the complications that would ensue concerning the exemption allowed. The act of 1905, which alone can be applied to the gift of 1908, allowed an exemption of $4,000 to an adult child. This, as we have seen, could not have been increased or diminished by a statute enacted after 1908. The acts of 1913–1915, in force when the legacy was received, allows an exemption of $10,000 to an adult child. If the legacy is to be considered as a distinct taxable unit, to be entirely separated from the gift of 1908 in ascertaining the rate and computing the tax, the exempt $10,000 of the value would be taken from the first $25,000 thereof, taxable at one per cent, and would result in a deduction of only $100 from the tax otherwise chargeable. The tax thereon, in that case, would amount to $5,924.15. But if, for computation of the tax on the legacy, the gift and legacy are to be combined, the total would be $997,073.57; and if the legacy, by any permissible construction, is to be considered as composing what may be styled the "upper crust" of the total, it would be taxed at twelve per cent. Various theories have been suggested as to the method of disposing of the exemption in such a case. One theory is that the $10,000 exemption of 1915 cannot be allowed to apply in full, but that it must be reduced by deducting the $4,000 exemption allowed by the act of 1905, which this theory concedes is applicable only to the gift of 1908, so that the exemption on the

legacy is only $6,000 instead of $10,000 as the 1915 act pre-
scribes. Such a construction would convict the legislature
of again attempting to discriminate where it could not
change, and again endeavoring to increase the tax on the
legacy of 1916 for the sole reason that it could not raise
the tax on the prior gift. It would also be a work of judi-
cial legislation, for the statute contains no language indi-
cating that any diminution of the $10,000 exemption is to
be made under any circumstances, and nothing purporting
to authorize an inference of a design to produce a result so
novel and remarkable. This plan is wholly without statu-
tory warrant, and, since it would add to the burden of tax,
it must be rejected, under the authorities heretofore cited.

Another theory is that the twelve per cent is first to be
computed on the entire value of the legacy, $146,773.57,
without deduction, producing the sum of $17,612.83; that the
deduction from the tax on account of the exempt $10,000
is then to be found by computing the lowest rate, one per
cent, on that sum, amounting to $100, and that the balance,
$17,512.83, is the lawful tax on the legacy. The act (sec. 7)
declares that "property of the clear value" of $10,000 going
to an adult child shall be exempt *"from the tax."* It is the
property of that value that is exempt. To that extent there
is no tax on the transfer. There is no provision that one
per cent of that sum shall be deducted from the tax com-
puted at twelve per cent on the value of the whole. It is
plain that the above theory, if applied, would impose a tax
of eleven per cent, or $1,100, on the exempt property itself.
It must be conceded that this theory is untenable.

The only remaining method of disposing of the exemption,
under respondent's theory of the other provisions of the act,
is that usually followed where the title to all the property
is received at death by the person to be taxed. The $10,000,
or whatever the exemption may be in the particular case, is
first deducted from the property value, as being a nontax-
able part thereof, and the rates, according to the graduated
scale in force at the death, are then computed on the bal-
ance. If, still following respondent's theory as to the rate,
the twelve per cent rate is applied, the result would be this:
Value remaining for taxation, $136,773.57; tax thereon at
twelve per cent, $16,412.83; or $1,200 less than the court
below found to be chargeable on the legacy. In that case
the order appealed from would be to that extent erroneous.

[14] Upon a consideration of all that has been said in the preceding portion of this opinion the only reasonable, practical, and lawful solution of the main question is to hold that in a case where a gift from a parent to a child, made in 1908, vests the title to and possession of the property at that date, but is made with the intent that it should not take effect in possession or enjoyment until after the death of the parent, so that neither the tax rate thereon nor the amount thereof exempt from such tax can be afterward changed by the legislature, and thereafter and before the death of the parent, the law in force at the date of such gift is amended by changing both the tax rate and the amount exempted from the tax, and upon the death of such parent such child succeeds to other property, the value of the parcel of property transferred by the gift and the value of the parcel transferred at death cannot be combined for the purpose of ascertaining the rate chargeable upon the property left to the child at the death, but that the rate thereon is to be calculated and the exemption therefrom allowed solely upon the value of the property vesting in the child at the death of the parent, without adding the value of the previous gift. In such cases the two transfers are to be treated as separate taxable units having no relation to each other.

[15] Against this conclusion the respondent invokes the rule that if a part of a statute is amended, such part is not to be considered as repealed and re-enacted, "but the portions which are not altered are to be considered as having been the law from the time they were enacted." (Pol. Code, sec. 325.) This rule, under some circumstances, has been extended so as to apply to a case where the new statute expressly repeals the whole of the former statute. (*Estate of Martin,* 153 Cal. 228 [94 Pac. 1053].) In the Martin case the Inheritance Tax Act of 1905 had expressly repealed the act of 1893 (Stats. 1893, p. 193) on that subject. In the latter act, however, there were two sections, one of which was a literal copy of a section of the prior act, and the other was the same as another section of the prior act, save a few words of trifling importance. These sections provided the mode of collecting the tax and were strictly remedial in character. It was held that the mode they prescribed could be adopted in collecting a tax after the act of 1905, which had accrued to the state under the act of 1893. The re-

spondent points out that where the person who had received
from a decedent a gift *inter vivos*, taxable under the act,
also succeeds to a part of the estate of such decedent at
death, the act of 1905 provided for an appraisement after
such death of all taxable interests of such person, and he
claims that it also provided that the computation of the
graduated tax rates prescribed in that act should be made
upon the combined value of the two transfers. This, however,
is not expressly declared anywhere in the act. He asserts that
this provision was, in substance, re-enacted by the revised law
of 1911, the revision of 1913, and the amendment of 1915
thereto. The act of 1905 required the court to appoint an
appraiser to ascertain and report the "value of any inheri-
tance, devise, bequest or other interest subject to the payment
of said tax," where the value was uncertain, and upon the re-
port of the appraiser to "forthwith assess and fix the market
value of all inheritances, devises, bequests or other interests,
and the tax to which the same is liable." (Sec. 14.) The
act of 1913 required the court to appoint an appraiser "to
ascertain and report to said superior court the amount of
inheritance tax due on any property passing in any probate
proceeding or a lien thereon, or upon any other property
transferred" within the meaning of subdivision 3 of sec-
tion 2 of the act, to any person taking property under the
probate proceedings. The appraiser was to report the
"value of the several interests in the estate of the dece-
dent," and the "amount of inheritance or transfer tax
chargeable against, or a lien upon such interests, acquired
by virtue of said probate proceedings or by any transfer
within the meaning of this act to any person" acquiring
property by virtue of said probate proceedings. Thereupon,
notice was to be given of the hearing upon the report and
the court at the hearing was to determine the amount of
the tax. (Sec. 16, Stats. 1913, p. 1077.) A comparison of
the respective sections of the acts of 1905 and 1913 on this
subject shows that while each act provides for an appraise-
ment of all property subject to tax, including that passing
by a prior gift as well as that passing at death, and perhaps
the imposition of the tax on the whole thereof passing to
the same person at the tax rates fixed by the respective
acts, the language in which these provisions are expressed is
not by any means the same in the two cases. The sections

on the subject have been entirely recast; the 1913 section contains many things not included in that of 1905, and the provisions here in question are not couched in the same or similar language. It cannot be truly said that any part of the act of 1905 on this subject has not been altered, at least with respect to words, in the revision of 1913. The rule stated in the Political Code and in *Estate of Martin, supra,* applies in all proper cases, but, like all other rules of statutory construction, they are subject to the controlling principle that the object and purpose of all interpretation is to arrive at the intent of the legislature. [16] Applying this principle to the present case we think it cannot be reasonably believed that the legislature intended that the provisions of the act of 1913 should be considered as re-enacting those of 1905 in this particular, with regard to the present case, where the result of such assumed re-enactment would be that the $497,073.57, the value in excess of $500,000, would be divided into two parts, one of which, $350,300, would be taxed at the rate of three per cent, as provided in the act of 1905, and the other part, $146,773.57, would be taxed at the rate of twelve per cent, fixed by the act of 1915 upon the excess over $500,000. Certainly no such remarkable process of computation as this, in such cases, is expressed or directed in either of the acts. Furthermore, it could not reasonably be applied where the later act provides a higher exemption than the prior act and the constitution forbids any increase or decrease of the exemption on the prior gift, so that it is necessary, as we have seen, to allow the full exemptions on each portion of the combined properties vested. For these reasons we are of the opinion that the rule sought to be invoked cannot be applied to the present case.

The order appealed from is reversed.

Lennon, J., Shurtleff, J., and Lawlor, J., concurred.

WILBUR, J., Dissenting.—I dissent.

Melissa A. Potter died testate on November 30, 1916. On October 22, 1908, she made a gift to her son of property valued at $850,300. He took immediate possession of such estate but thereafter, during his mother's life, paid to her the whole income therefrom. The trial court found as a fact that from and after said transfer the son had been the

owner of and in the possession of the property conveyed to him by his mother; that the transfers to said son "were intended to take effect in possession and enjoyment after death, and were made in contemplation of death within the meaning of the Inheritance Tax Law of the State of California"; "that said transfer was made without valuable and adequate consideration or valuable or adequate consideration and was a gift from Melissa Amelia Potter to her said son." These findings are not attacked because of the insufficiency of the evidence to sustain them, either by specification of insufficiency in the bill of exceptions or in the briefs of counsel, and hence must be taken as true (2 Cal. Jur., sec. 407, p. 708, and cases cited.) Notwithstanding that the findings are based upon a stipulation, the legal conclusion from these findings would seem to be that the mother, in contemplation of death, conveyed the legal title to her son without consideration as a gift, reserving a beneficial life estate to herself, with a remainder in the beneficial estate to the son, and that his ownership and possession during her life was in subordination to her equitable life estate, otherwise it could not be said that the transfer was intended "to take effect in possession and enjoyment after her death." The significance of these findings will be considered later in this opinion, when we discuss the method of appraisal for inheritance tax purposes.

It was stipulated between the parties that the gift was taxable under the inheritance tax law of 1905 in effect at the time of the transfers, and the court so decreed and that tax has been paid. (*Estate of Felton,* 176 Cal. 663 [169 Pac. 392].) Appellant has also paid the amount of $5,924.14 upon the legacy but contests the balance of the tax thereon as fixed by the court. The difference between the parties arises out of the claim of the state controller that the legacy is taxable at twelve per cent of its value. The twelve per cent rate, however, is only permissible upon the theory that the gift of $850,300 is to be taken into consideration in connection with the bequest of $146,773.57, as constituting the taxable entity at the death of the decedent, and that when thus considered the entire estate is to be taxed upon a basis of a total valuation of the sum of these two amounts, $997,073.57, taxable at the rate of twelve per cent on amounts over $500,000, under the inheritance tax law in

force at the time of her death (Stats. 1913, p. 1066, as amended in 1915, p. 418). For convenience we will hereafter refer to this law as the law of 1913, and the law in force at the time of the transfer as the law of 1905.

This precise point raised by this appeal was involved in the *Estate of Felton, supra,* but by reason of the fact that the tax upon the legacy had been assessed and collected as a separate matter and the order fixing the tax had not been appealed from by the state, it was there held that the tax upon the transfer should be assessed without regard to the tax already assessed by the order of court, and theretofore paid. The first question involved is whether or not the legislature in enacting the law of 1913 intended to include property theretofore transferred as a part of the estate to be appraised at the time of the death as a basis of fixing the inheritance tax, and second, whether or not such intention can be enforced without violating the constitution. The first question can be determined from the terms of the act itself. Where property is transferred "in contemplation of death . . . or intended to take effect in possession or enjoyment at or after such death," such transfer is made taxable by section 2, subdivision 3, of the law of 1913. The inheritance tax appraiser is required to "ascertain and report to said superior court the amount of inheritance tax due upon any property passing in said probate proceeding, or a lien thereon, *or upon any other property transferred within the meaning of subdivision 3 of section 2 of this act, to any person . . . taking property under and by virtue of said probate proceedings*" (sec. 16). (Italics ours.) At the conclusion of his investigation it is provided that the appraiser must report to the court "the amount of inheritance or transfer tax chargeable against, or a lien upon such interests acquired by virtue of said probate proceedings *or by any transfer within the meaning of this act to any person . . . acquiring any property by virtue of said probate proceedings . . .*" (sec. 16). (Italics ours.)

Now, the son is a person who was a person taking property by "virtue of the probate proceedings" and hence the law expressly directed the appraisal of his legacy and also of the property transferred to him for the purpose of ascertaining the amount of the inheritance or succession tax to be paid by him.

By section 4 of the law of 1913, all inheritance taxes remain a lien upon property passed or transferred by conveyance, by will or by succession (sec. 1, subd. c, sec. 4). This section also provides that "The tax so imposed shall be upon the market value of such property at the rates hereinafter prescribed and only upon the excess over the exemptions hereinafter granted; and provided, that in determining said market value no deduction shall be made for any family allowance made out of said estate." These rates are stated in section 6 of the law of 1913, as amended 1915 (Stats. 1915, pp. 418, 420), as follows: "When the market value of such property or interest passed or transferred to any of the persons mentioned in subdivision one of section five [husband, wife, lineal issue, etc.] exceeds twenty-five thousand dollars, the rates of tax upon such excess shall be as follows: (a) upon all in excess of twenty-five thousand dollars and up to fifty thousand dollars, two per centum of such excess . . . (e) upon all in excess of five hundred thousand dollars and up to one million dollars, twelve per centum of such excess . . . "

It should be borne in mind that the word "transfer" as used in the act includes the passing of property both by deed and by will (sec. 1, subd. c, defining transfer). So that when section 4 directs the market value of the interest "passed or transferred" it includes the gift as well as the legacy. There is no suggestion that the property transferred by deed should be assessed separately from the property passing by will. The tax in both instances is upon the right of succession, accruing and payable at death. Section 8 of the law of 1913 expressly provides that all taxes imposed by the act, unless otherwise therein provided for, "shall be due and payable at the death of the decedent . . . "

It would be doing violence to the requirement concerning appraisal to hold that there should be a separate appraisal of property passing by deed and by will, and that the succession tax should be reduced by allowing double exemptions and by starting again in each instance at the basis rate. In view of the nature of the tax and of the fact that the tax upon conveyances is only in aid of the tax upon the right of succession at death, there is no reason for a segregation of the two interests passing to one person, one by deed and one by will. In contemplation of the law he

receives each by succession, one part actually, the other constructively, and the tax is upon the right of the individual who receives the property to take by succession. It is reasonable to assume that the legislature would treat the property so received as an entity unless otherwise clearly indicated. The system of a taxation by a graduated scale of percentages upon the value of the property shows the intention so to do. It is apparent from these provisions that where a legatee or devisee takes property by will and also by reason of a previous transfer, the entire amount of the tax is to be assessed and collected as a whole. It is clear, therefore, that as to transfers and devises and bequests made *after* the enactment of the law of 1913, the tax upon the legacy in question being assessed as a part of the whole, the property received by the legatee or devisee will be assessed as property over $850,000 and under $1,000,000, to wit, at the rate of twelve per cent.

The recent decisions of this court in *Estate of Miller*, 184 Cal. 674 [16 A. L. R. 694, 195 Pac. 413], and *Chambers v. Lamb*, 186 Cal. 261 [199 Pac. 33], bear upon the question of appraisement for purposes of taxation. The former holds that where a remainder is predicated upon the decedent's life, that remainder is to be appraised at its market value at the time of death of the life tenant, less deductions from the estate due to the federal tax which was held to be a tax upon the whole estate at death, in that case amounting to $4,000,000, rather than upon the right of the beneficiaries of the estate to succeed. That decision was based upon section 5 of the law of 1905, which specially provides for the assessment of an estate in remainder. The law of 1913 contains a similar provision in section 9 which, under that decision in the case at bar, would require the appraisal of the appellant's estate in remainder if it be such at its value at the time of death. In *Chambers v. Lamb* it was held that where the transfer in contemplation of death was of the fee, the tax should be fixed upon the market value at the time of the transfer and not at the time of death, which, if appellant's title was a fee, would require its appraisal at the date of the transfer. In that case, however, the tax was collected in a separate action, and the question of its constituting a part of the estate assessable to a legatee who also receives property under a will was neither involved nor

discussed, as that question was involved in this case then pending on a rehearing.

For the reasons stated I think it clear that where a person takes property by deed and later also takes an estate by will or succession from the grantor, and where both are taxable under the inheritance law of 1913, the value of both should be considered in fixing the rate to be paid by the owner of the property. That is to say, if the law of 1913 had been in effect both at the date of the deed and of the death of the testatrix the gift of $850,300 and the legacy of $146,773.57 should be assessed as an entity. The gift is assessed as of the date of the gift, if a fee is conveyed, or if a remainder only is conveyed as of the date of death; and the legacy as of the date of death.

The fact that part of the property received by the beneficiary is by conveyance does not alter the fundamental rule that succession or inheritance taxes relate to the death of the donor, and are a tax upon the right of succession. If I am correct in the conclusion that the law of 1913 permits and requires that property *thereafter* conveyed should be taxed as a part of the estate received by the donee at death, it would follow that had the grant to the son been made after the passage of the law, he would have been taxed thereon at the rate of twelve per cent on all over $500,000. The law of 1913 does not expressly except from its terms conveyances made before its passage, nor expressly deal with that subject except that in repealing previous inheritance tax laws there is a clause saving the right of the state to taxes under the provisions of the acts so repealed.

If the transfer by deed in the case at bar was not taxable at all at the time it was made, as was the case in *Hunt* v. *Wicht*, 174 Cal. 205 [L. R. A. 1917C, 961, 162 Pac. 639], it might be said that the inheritance tax law should not be given a retroactive effect and therefore should not be construed as affecting such a transfer, even if there were no constitutional objection to such a retroactive law. But in the case at bar the provisions of the law requiring a taxation of such transfers have been in existence since 1905 and the provisions of the law of 1913 are mere continuations of the law then in existence, notwithstanding that the form

188 Cal.—6

of amendment was by a new enactment. After the law of 1905, transfers before death, if taxable, were a part of the estate to be appraised at death for taxation purposes.

I am not for the moment considering the tax rate to be applied to the property transferred before death, but am considering only the system or scheme provided by the law of 1913 for the appraisement of transfers and bequests, for the purpose of calling attention to the fact that neither the language of the act construed according to its natural import nor the principle of law that the tax is one upon the right of succession either justifies or requires taxation of the transfer as a separate entity, but, on the other hand, clearly requires the taxation of both as a single entity.

Another consideration also leads to the conclusion that the legislature intended that transfers and bequests made after the passage of the act should be considered together as a taxable unit, that is to say, the matter of exemptions, which are provided for in section 7 of the law of 1913. This exemption to a son is $10,000 (sec. 7, subd. 2), to be deducted from the first 25,000 (sec. 5, *supra*). If the transfer and bequest are considered together the application of the exemption to the first $25,000 of the estate is simple enough, but if the two are regarded as separate entities for taxation purposes, it would hardly be contended that the legislature intended to allow two exemptions of $10,000 each, where it only provided for one exemption. If we regard a transfer by deed, as a separate entity for taxation purposes, fixing the value of each gift as of the date of transfer (*Chambers* v. *Lamb, supra*), we would be compelled to allow as many exemptions as there were transfers, for section 5 provides: "When the property . . . passed or transferred exceeds in value the exemption hereinafter specified and shall not exceed in value twenty-five thousand dollars, the tax hereby imposed shall be," etc. It would follow that in the case of a son, inheritance taxes could be entirely avoided by splitting the estate into separate parcels, each less than $10,000, and making separate deeds of gift for each. Such a construction is obviously inconsistent with the entire scheme of the law, and leads to an absurd result destructive of the entire purpose of the taxation of transfers in and of a succession tax. In the case at bar there were in fact a number

of transfers, all of which we have so far considered as one entity as the parties have stipulated should be done.

So far I have only considered the proper construction of the law of 1913 as applied to transfers and legacies thereafter vesting. I will now turn to the question of the effect of the constitution and our decisions thereunder upon the appraisal and taxation of estates where a part of the property passes *before* the law of 1913 became effective but *after* the law of 1905 was in effect. Before taking up that question it should be said that in our former opinion we relied upon a clause in section 2 of the act of 1913 as showing an *express* intent to tax transfers *theretofore* made, under its provisions. This provision of section 2 of the act was thus referred to in the opinion: "The Inheritance Tax Act of 1913 (Stats. 1913, p. 1066), provides for a tax upon all transfers 'whether made before or after the passage of this Act (Sec. 2).'" This statement was in accordance with the contention of the respondent as follows: "Section 2 of Chapter 595 of the Statutes of 1913 provided that where any decedent might die subsequent to the passage of said statute all transfers made by said decedent, 'whether made before or after the passage of this Act,' should be taxable at the rates in said act provided."

The appellant merely stated in reply: "Respondent baldly alleges this (sec. 2) covers all property transferred, before or after the enactment of the law. The statute clearly shows that it refers only to such cases wherein the property vests after the act, under a transfer made at any time. That the time of 'vesting' is the essential and not the time of making the provision under which the vesting may occur."

These two statements constituted the entire argument upon the subject. The meaning of that clause of section 2 had not been previously passed upon by this court. It was before the court in *Hunt* v. *Wicht, supra.* The phrase, "whether made before or after the passage of the act," is considered, and it is there *conceded* for the purpose of the decision that it was the intention of the legislature by this clause to tax transfers made *before* the act took effect and that case was decided upon that assumption.

An elaborate petition for rehearing on this point called our attention to the judicial and legislative history of this section in this state and in the state of New York, from

which it was adopted. A rehearing was granted in order that this point might receive further consideration. The point was extensively briefed and argued, and after such argument I am satisfied that the proper interpretation of this clause is so doubtful that it should not be greatly relied upon in determining the point in issue in this case. It is suggested that it is void and unconstitutional as to vested estates, but valid as to contingent interests conveyed by deed before the passage of the act, but vesting in possession or enjoyment after the passage of the law. This construction of the New York law, from which our statute of 1911 and 1913 is claimed to have been adopted by our legislature, was said to be untenable in *In re Craig*, 97 App. Div. 289 [89 N. Y. Supp. 971], cited by this court in *Hunt* v. *Wicht, supra;* although the statement was perhaps *obiter dicta.* The question was directly determined later in *Re Smith,* 150 App. Div. 805 [135 N. Y. Supp. 240], wherein it was held that the constitution forbade the taxation of a contingent remainder, granted in a deed executed before the law took effect, where the contingency happened and the estate vested after the law went into effect. In this and other cases it was held by the New York courts that the terms of the statute were broad enough to include all transfers made before the passage of the act and were only made ineffective because of the constitutional guarantees against the taking of property without compensation and against the impairment of the obligation contracts.

I think that the language of section 2 above quoted is broad enough, if unrestricted by constitutional inhibitions, in its plain import to include all transfers made before the passage of the act, and this seems to have been the view of the New York courts in *In re Birdsall's Estate*, 22 Misc. Rep. 180 [49 N. Y. Supp. 450, 462] ; *In re Harbeck's Estate,* 43 App. Div. 188 [59 N. Y. Supp. 362] ; *In re Pell's Estate,* 171 N. Y. 48 [89 Am. St. Rep. 791, 57 L. R. A. 540, 63 N. E. 789], as well as of our own court (*Hunt* v. *Wicht, supra*). What it has been or will be construed to mean in the light of its legislative and judicial history and under our constitution is a question merely incidentally involved in our consideration of the general scheme of legislation, and I refrain from placing a definite construction thereon, leaving that matter for further consideration when it arises.

.Assuming, then, that the whole scheme of legislation shows that prior taxable transfers were to be added to subsequent taxable bequests in fixing the rate of taxation, it remains for us to consider the effect of our constitution upon this whole legislative scheme as it affects a transfer made before its passage, and in that inquiry it is important to bear in mind that the transfer of property is not taxable as a transfer, but because the transfer is made in contemplation of death, and is in lieu of a transfer at death. Such a transfer, if permitted to go untaxed, would open the door for a defeat of all effective taxation upon the right of succession. If the tax were a mere transfer tax it would unquestionably be violative of our constitutional restrictions upon the subject of taxation, but considered as a part of a scheme for the taxation of the right of succession, it has been uniformly upheld. The appropriate time for fixing of taxes upon the right of succession is at the death of the donor, as our law provides. We have held, however, that the legislature cannot increase the tax upon a gift, in contemplation of death, after the transfer *inter vivos* has been fully consummated, and the title entirely vested, for the reason that to do so would be to take property without compensation, because the donee takes the property subject to a lien of the inheritance or transfer tax then fixed by law; and to subsequently increase the amount of that lien would be to that extent a taking away from the donee of that which is already vested in him. (*Hunt* v. *Wicht, supra; Estate of Felton, supra.*)

It has also been held that the right of the state to this tax has so far vested that the law cannot be subsequently repealed, for the reason that to do so would in effect be a gift of the property of the state, in violation of the inhibition of the constitution (*Estate of Stanford,* 126 Cal. 112 [45 L. R. A. 788, 58 Pac. 462]). In short, applying the principle of these cases to the transfer by way of gift in the case at bar, the son thereby became entitled to the estate valued at $850,300, subject to a lien in favor of the state for a succession tax of $22,094, payable upon the death of the grantor, and the value of his vested interest protected by the constitution represented the difference between these two amounts, $828,206.

The tax resulting from the gift is not in dispute and the only question in the case at bar is whether the legislature

had the power to include, and intended to include, the value of the gift in estimating the succession tax to be paid by the son upon the property received by him by gift and bequest in order to fix the rate to be paid upon the bequest.

As a transfer made in contemplation of death is only taxable in aid of a succession tax, it would seem that the legislature in fixing the rate of taxation upon the property passing at the time of death has always *power* to consider all property which has theretofore passed to the legatee by gift in contemplation of death. That it has no *power* to increase the amount of tax upon the property already vested in the legatee in no way bears upon the question of the power of the legislature to consider that element in fixing the tax to be paid by the legatee for property transferred at death. The question at issue resolves itself into this: "Has the legislature in fixing a succession tax the right to consider, in fixing the rate, the total amount of property to which the heir succeeds?" As the taxes are only permissible as succession taxes and as the legislature has full power to fix the amount of that tax by any standard or method it chooses, it would follow that the legislature has *power* to include previous transfers in contemplation of death, taxable only because, in a sense, they evade the taxation at the time of death, in estimating the percentage that is to be paid on the property which passes at the time of death.

We properly ignore the date of a will in determining the inheritance tax, and hence do not consider whether the rate of taxation has been increased by statute enacted after the execution of a will, because the will is ineffective to pass property until death, but from a constitutional standpoint, the only essential distinction between a legacy and a gift *inter vivos* in contemplation of death is that the legacy does not vest in the legatee until the death of the testator, and consequently the right of the legatee is inchoate until the death of the testator, while in the case of a gift *inter vivos* the title passes at once. It is because of the vested right of the donee and not because of the date when the intent of the donor becomes fixed that the tax on a gift *inter vivos* cannot be increased by subsequent legislation. But there is no greater constitutional reason for the separation of the two, the transfer and the legacy, in taxing the right of succession on the legacy, than there would be constitutional reason

for excluding a bequest in a will in considering a subsequent bequest in a codicil. In the latter case both are to be considered together in fixing the tax on the second bequest, and it would seem equally clear that the previous transfer may also be considered in fixing a tax on a legacy given thereafter.

I conclude that the legislature had the power to require that taxable gifts *inter vivos* should be taken into consideration in determining the total tax to be paid by the donee where the donee takes under a will made effective by the death of the testator after the passage of the law. As I have shown, it was the intent of the legislature that transfers in contemplation of death, or intended to take effect in possession or enjoyment at or after such death, should be added to legacies to ascertain the taxable unit. No distinction is made in the law of 1913 as to the method of taxing transfers made before and after the act, the legislature leaving the taxation officers and courts to apply the constitutional restrictions to their general scheme of taxation. The constitution requires that the tax, in this instance, should not exceed $22,094 on the gift of $850,300, while the total tax upon an estate of $850,000, plus $146,773.57, that is of $997,073.57, under the law of 1913, would be $99,238.83, being a total of $81,686 on the first $850,300 and of $17,552.83 on the last $146,773.57. Under the law of 1905, applicable to the gift, the tax thereon cannot exceed $22,094, that being the total tax at the time title vested, hence the tax under the law of 1913 on the first $850,300 when fixed in the manner required by that act is too much by the difference between the amount figured on the basis of the law of 1913 ($81,686) and figured on the basis of the law of 1905 ($22,094), and that difference is $59,592. By subtracting this amount to make the total tax conform to the constitution we have as the total tax $99,238.83, minus $59,592, and this is $39,646.83. (*Hunt* v. *Wicht, supra.*) In other words, the act fixes the tax to be paid by appellant at $99,238.83, but the constitution requires a deduction from that amount of $59,592, for the reason that to the extent of $59,592 the tax interferes with a vested right.

In support of appellant's contention certain decisions by the New York courts are cited (*In re Hodges' Estate,* 215

N. Y. 447 [109 N. E. 559]; *In re Thompson's Estate,* 167 App. Div. 356 [153 N. Y. Supp. 164]; *In re Meserole's Estate,* 98 Misc. Rep. 105 [162 N. Y. Supp. 414]; *In re Garcia's Estate,* 183 App. Div. 712 [170 N. Y. Supp. 980].) By the New York statute all taxes imposed upon transfers are made due and payable at the time of the transfer, while in this state they are due and payable at the death of the decedent. In *Estate of Hodges, supra,* it is said: "Where the transfers are thus distinct in character, one being a gift *inter vivos* taxable when made, and the other a legacy taxable only upon the death of the testator, there appears to be no warrant in law for adding them together and considering them as one transfer." Thus it appears that the decisions of the New York courts are based upon the distinction between their statute and ours. If any aid on the question under discussion is to be derived from the legislation of other states on the subject not on all-fours with ours, the case of *In re Stephenson's Estate,* 171 Wis. 452 [177 N. W. 579], decided May 4, 1920, by the supreme court of Wisconsin would seem to be as helpful as any case on the subject. It was held by that court that the gift *inter vivos* was to be added to the legacy to determine the amount of the tax on the latter. In that connection the court said:

"The statute contemplates but one estate for each decedent, else there would be but little object in graduating the tax according to amount, for the estate could easily be split up into a number of gifts, trusts, or wills and intestate property, and thus the graduated feature of the statute could be entirely defeated. The law provides for transfer by will, by intestate law, and by gift in contemplation of death. These all connote testamentary or intestate disposition of an estate. Gifts made in contemplation of death for taxing purposes under the statute become a part of the estate of the decedent. A deceased person can leave but one estate. All property owned by him at the time of his death is a part of his estate, and gifts previously made in contemplation of death for taxing purposes merge in the estate. Such is the obvious scope and purpose of the law, such has been the administration under it, and such has been the construction given it by this court. . . .

"Language could not very well be more clear and explicit to the effect that for taxing purposes the tax accrues and

the transfer takes place as of the time of the death of the transferor. In *State* v. *Bullen,* 143 Wis. 512 [128 N. W. 109], transfer of property made in contemplation of death was treated as part of the estate. So, also, in *State* v. *Thompson,* 154 Wis. 320 [142 N. W. 647]; in *Estate of Ebeling,* 169 Wis. 432 [172 N. W. 734]; and in *Estate of Week,* 169 Wis. 316 [172 N. W. 732]. In the latter case it is said: 'The transfer contemplated occurs at the instant of death.' (169 Wis. 318.) . . . Our conclusion is the county court properly added the value of the property passing under the trust to the value of the property passing under the will and applied the correct rate to the sum thereof.''

The appellant points out, however, that this case cannot be followed in this state, for it holds that the increased tax rate in a law passed *after* the transfer could be applied to such transfer and is therefore contrary to our decisions (*Hunt* v. *Wicht, supra; Estate of Felton, supra; Nickel* v. *State,* 179 Cal. 126 [175 Pac. 641]; *Estate of Brix,* 181 Cal. 667 [186 Pac. 135]), but these cases were decided upon the proposition that the constitution compelled such a construction. The Wisconsin case is authority upon the proposition that the *language* of our statute contemplates a single unit of assessment, and hence that such language should control in the absence of constitutional objection, and as far as permissible by the constitution.

In considering the constitutional question involved, the fact that the son's exemption under the law of 1905 is upon the first $4,000, estimated at one per cent (*Estate of Timken,* 158 Cal. 51 [109 Pac. 608], or $40 tax, and under the law of 1913 is /$10,000 at the same rate, or $100 tax, is discussed. The point presents some difficulty, but if two matters are borne in mind the difficulty is capable of a simple solution. First, there is no vested right in an exemption, in effect at the time of the transfer, or in the mode or manner of fixing the tax. Second, in fixing the tax under the law of 1913 upon a unit basis the exemption is allowed. Thus, the amount of $99,238.83 above stated as the total tax under the law of 1913 is the amount fixed after allowance of the exemption of $10,000, while the amount of the exemption under the law of 1905 ($4,000) is allowed in figuring the tax of $22,094 upon the gift of $850,300, and hence the amount to be deducted, $59,592, from the tax

estimated under the 1913 basis, $99,238.83, is to that extent increased, that is, by $40, being one per cent upon $4,000. The fact that there is no vested interest in an exemption, existing at the time of a transfer, is clearly shown by assuming a case where the exemption exceeds the gift. It would hardly be contended that such surplus exemption could be carried over and deducted from a subsequent legacy, where the exemption then in effect was also deducted therefrom. The matter of exemption is of relatively little importance except as it bears upon the question as to whether the estate is to be taxed as one or as two units. As the matter of exemptions is involved and is discussed by counsel, I will proceed with the discussion on that subject before fully disposing of the constitutional question involved, as the consideration of that subject is germane to the constitutional question. In this discussion I adopt the following from the majority opinion vacated by rehearing:

"The appellant suggests rather than argues that an exemption of $10,000 should have been allowed in taxing the legacy. The amount of this exemption, as contended for by the appellant, would be $1,200. That is to say, twelve per cent upon a $10,000 exemption. Unless we hold that the bequest is to be considered alone, as the appellant contends it should be, it is obvious that the position of the appellant with reference to the exemption cannot be maintained. By both the law of 1905 and the law of 1913, the amount of the exemption is deducted from the first $25,000. As the tax upon the first $25,000 under both laws is one per cent, it follows that the exemption under the law of 1913 cannot, in any event, decrease the total tax by more than $100. Under the law of 1905 the exemption of $4,000 could not decrease the tax by more than $40. In other words, the difference between an exemption of $4,000, allowed under the law of 1905, and the $10,000, allowed under the law of 1915, would be, in terms of the tax, $60. It is obvious, therefore, that if we decrease the total tax on the transfer and the legacy by $100 we have given to the appellant the total exemption allowed by the law of 1913. This is exactly what was done by the trial court. The parties had stipulated that the proper tax upon the gift *inter vivos* was $22,094. This result was arrived at by computing the tax as follows: $4,000 was allowed as exempt, the bal-

ance of the first $25,000, to wit, $21,000, was taxed at one per cent; the next $25,000 at one and one-half per cent; the next $50,000, at two per cent; the next $400,000 at two and one-half per cent, and the balance, $350,300, at three per cent. The court disregarded the stipulation of the parties as to the amount of the tax upon the transfer and fixed the tax as follows: $10,000 was allowed as exempt, the next $15,000 was taxed at one per cent, the next $25,000 at one and one-half per cent, the next $50,000 at two per cent, the next $400,000 at two and one-half per cent, the balance of $350,300 at three per cent. The amount of the tax thus obtained was $22,034. The difference between the two amounts of the tax ($60) represents the allowance of the $6,000 exemption. That is to say, it represents one per cent on $6,000. No exemption was allowed upon the legacy, which was taxed at twelve per cent. In fixing the tax upon the transfer, as we have already seen, the tax is to be computed under the law of 1905 in force at the time of the transfer. Consequently, the amount of the principal exempt from taxation is $4,000. This exemption could not constitutionally be increased by subsequent legislation (*Estate of Stanford,* 126 Cal. 112 [45 L. R. A. 788, 58 Pac. 462].) The result arrived at by the court in disregard of the stipulation of the parties was erroneous as the total tax upon the transfer should have been $22,094, as stipulated. We have then to consider what is the result from the fact that the law of 1913 permits an exemption of $10,000, or of a total diminution of the tax of one per cent on that amount, namely, $100. This is an increase of $6,000 over and above the exemption allowed by the law of 1905. If we deduct the tax upon this $6,000 exemption, which, under the law of 1913, amounts to $60, from the total tax figured under the law of 1913 upon the legacy, it will decrease the total tax thereon as estimated by the court by the amount of $60, so that the total tax thereon will amount to $17,552.83 instead of $17,612.83. But the total tax will amount to the same as that fixed by the court. That is to say, the court, in fixing the tax upon the transfer, estimated it $60 too little, and in fixing the tax upon the legacy, estimated it at $60 too much. There was, therefore, no error in the gross amount of the tax fixed, to wit: $39,646.83.

"In the stipulation filed by the parties, after stating the issue between the state and the appellant was whether the tax on the legacy should be $5,924.14, or should be $17,612.83, it is agreed that the court is 'to adjudge and determine as the only issue unsettled in this matter, the method of the determination of and the amount of said tax payable on the legacy provided to said Jesse Sheldon Lux Potter and the clear market value of the residue of said estate to which he is shown in said report to be entitled.' It is also stated in the stipulation and in the findings that the appellant had already paid into the county treasury the sum of $28,194.67. It thus appears that the appellant has paid the entire amount of the stipulated tax upon the transfer to him made in contemplation of death, to wit, $22,094, and also the tax upon the legacy computed upon the basis upon which he contends that tax should be computed, to wit, $5,924.14, and that the only question involved before the court was as to the amount of tax to be fixed *upon the legacy.* The court correctly fixed the total tax payable and the balance due."

Upon the question of the propriety of a unit estate for purposes of taxation appellant argues the injustice of such a rule and offers the following hypothetical case:

"If on the day Mrs. Potter died, another mother had also died, leaving her entire estate of $146,773.57 to her son (and he had not been the transferee of any taxable transfers made by her in life), the tax assessed against him would be $5,924.14, whereas for the same inheritance, in the same form, and under the same statute, the tax imposed upon the appellant is $17,612.83, which has been assessed against him on account of a past transfer which might have been untaxed at the time of its occurrence (as in *Hunt* v. *Wicht*), or taxable at the time of its occurrence at a lower rate (as in this case). If the computation of the court below were upheld, these two sons, receiving identical amounts at death, would be put in different classifications for a purely arbitrary reason, namely, because of an event which had taken place in an era either of no taxation or of lower taxation. Such a classification is invalid under *Mordecai* v. *Board,* 183 Cal. 434 [192 Pac. 40].

"If the statute of 1905 had provided that all transfers after that date between the same donor and donee should

be added together in computing the tax, we have no doubt that the provision would have been valid. But as we have seen, it did not do so.''

Such illustrations are not very helpful in construing the law, because so many different conditions may exist. For instance, we might assume that Mrs. Potter had an estate of $2,000,000, which she wishes to divide equally between her two sons. One was a minor and the other an adult. For that reason in 1908 she conveys to the adult son an estate valued at $850,000, retaining the income during her life. She retains the title to $850,000 intended for the minor son and bequeathes to him this amount plus his half interest in the $300,000 which she divides equally between the two brothers in her will. Under our decision the younger brother would not only be required to pay a tax of $81,650 upon the $850,000 he received by will as against $22,085 paid by his brother upon the property of the same value deeded to him, but he is also required to pay a tax of $18,000 upon his $150,000 received by will, while his brother would have to pay $6,150 only on his legacy of $150,000. Thus the total tax paid by the younger son would be $99,650, while the older son would pay $30,945. The amount paid by the younger brother would thus exceed that paid by the older brother $68,705, this difference resulting from the application of the constitutional inhibition to the legislative action. If the legislature attempted to place the brothers on an equality with relation to the last $150,000 received by the older brother, which is as far as the legislature could go in view of the constitution, I do not think we could say that such legislative action would work an injustice to the older brother, but, on the contrary, that it would indicate an intention to place both brothers on an equality so far as it had the power so to do. Or, assume that both the gift and the will became effective under the law of 1913, and that the mother died the day after the transfer, would anyone contend that justice required that the younger son should be taxed $81,650 and the older brother taxed upon two entities, the gift and bequest, which would reduce his tax $11,850 below the younger brother?

We do not think it can be said that any inherent injustice can be worked upon a beneficiary by treating the property received by way of gift and by way of will or succession

as an entity for the purposes of taxation, and where the constitutional provision against taking property without due process of law operates to relieve a beneficiary of any higher rate upon his gift than that in force at the time of the vesting of the gift, his rights are fully protected.

There is another line of reasoning which would tend to support the conclusion that the constitution permitted and the legislature intended that the rate upon the bequest to the son should be fixed by including both gift and legacy in the entity tax for the purpose of fixing the rate upon the bequest. This reasoning was elaborated upon by Mr. Justice Olney in his concurring opinion, found in 204 Pac. 844. This reasoning may be summarized as follows: The law of 1905 in force at the time of the gift to the son not only fixed the rates of taxation to be applied to the gift but also provided that if the donor subsequently bequeathed or devised property to her son, the gift should be included in the entity taxable for the purpose of fixing the amount of the tax on the legacy. In other words, the law of 1905 provided that the tax upon the $146,773.57, if she should subsequently bequeath so much, would be three per cent instead of one per cent upon the first $25,000 (less a deduction of $4,000 exemption), one and one-half per cent upon the next $25,000, two per cent upon the next $50,000, and two and one-half per cent upon the $46,773.57. The legislature had no power to increase the rate of taxes upon the gift, but it retained power to increase the rate of tax upon the legacy. The law of 1913 is virtually a re-enactment of the law of 1905 so far as the matters under consideration are concerned except as to the rates of taxation and amounts of exemption, and also contemplates the including of the gift and the bequest as a single entity. The situation then is as suggested by Justice Olney, as if the legislature had entered into an agreement with Mrs. Potter providing, first, that the gift should be taxed at a certain amount; second, that the tax upon future legacies should be computed by adding those legacies to that gift, and, third, that the rate of tax upon such legacies should be three per cent in the event that such legacies did not exceed $150,000. Subsequently the legislature enacts a law which provides, first, for an increased rate of tax upon the gift without expressly providing for the case of a gift made under the

law of 1905, the new law also providing that the gift and
legacy should be considered together as an entity for the
purpose of fixing the rate of tax to be paid upon the entity;
third, providing that the rate paid upon the bequest should
be twelve per cent instead of three per cent. There is no
question as to the right of the legislature to increase the
tax upon the legacy. If at the time the gift was made there
was no obligation to pay a tax thereon, as was the case
in *Hunt* v. *Wicht, supra,* it should no doubt be said that
the attempt to increase the tax to the son upon a legacy
under a law subsequently enacted would be an invalid at-
tempt to penalize the son because he had received a non-
taxable gift. Where, however, at the time of the gift it is
not only taxable, but also as a part of the taxation scheme
it was provided that it should be included in the entire
estate received by the donee for the purpose of fixing the
tax payable by him, the increase of the rate of tax upon
the legacy resulting from this system of estimating the tax
would amount to no more than an increase of the rate upon
the legacy. I think this is a legitimate argument tending
to show the purpose and to illustrate the power of the
legislature, and particularly as indicating that there is no
injustice in including in the entity to be taxed all of the
estate received by the person taxed which is subject to the
tax.

It have thus endeavored to ascertain the intention of the
legislature in enacting the law of 1913 with reference to
gifts, and have concluded that taking the act by its four
corners, it was the intention of the legislature to include
such gifts in the taxable unit at death where other prop-
erty is left by will or inheritance. I find no recognition
by the legislature in the law of 1913 of the difference be-
tween transfers made before and those made after the pas-
sage of the law, and hence must refer the distinction in
classification to the constitution, which protects vested rights
instead of to the inheritance tax laws, which apparently
ignore them.

It is suggested that rules of construction aid in the proper
interpretation of the law of 1913; first, that laws, if pos-
sible, should be interpreted so as to conform to constitu-
tional restrictions, even if it requires a strained construction
of the language of the statute rather than to impute to

the legislature an attempt to violate the constitution; second, that tax laws should be construed strictly in favor of the property holder. A brief consideration of these propositions is desirable.

With reference to the first rule it should be observed that the case of *Hunt* v. *Wicht, supra,* holding that the legislature was powerless to impose a tax upon conveyances that were not taxable when made, was rendered in January, 1917, and even then it was conceded in that case for the purpose of the decision that section 2 of the law of 1905 applied *ex vi termini* to transfers made and title vested before the passage of the act. Immediately after that decision the legislature then in session passed a new inheritance tax law (Stats. 1917, c. 589, p. 880), expressly providing for the taxation of the entire estate passing to a single person as a unit. The provision is as follows (p. 883) : "(9) When more than one transfer within the meaning of any of the preceding subdivisions of this section has been made, either before or after the passage of this act, by a decedent to one person, the tax shall be imposed upon the aggregate market value of all of the property so transferred to such person in the same manner and to the same extent as if all of the property so transferred were actually transferred by one transfer."

The decision in *Estate of Felton, supra,* wherein it was held that the tax rate to be applied to a gift was that in force at the time of the gift was not decided until December 12, 1917, after the legislature of 1917 adjourned, although pending for decision during the legislative session. Thus, the question of the right to tax a gift made at a time when there was no tax, or at a new rate when there was a provision for a tax on the transfer in force at the time the transfer was made, was not decided until long after the statute of 1913 was enacted. Under these circumstances it seems to be the rational method of construction to take the legislation under consideration at its face value to determine its meaning from its context and then apply the constitutional restrictions necessary to protect the property owner in his vested rights. The law of 1913 was passed at a time when the constitutional questions involved in inheritance tax matters were in grave doubt, and in actual litigation between the officers of the state and those from whom it was

sought to collect such taxes. The legislature, under these circumstances, made the following declaration in section 25 of the law of 1913:

"Sec. 25. If any section, subsection, sentence, clause or phrase of this act is for any reason held to be unconstitutional, such decision shall not affect the validity of the remaining portions of this act. The legislature hereby declares that it would have passed this act, and each section, subsection, sentence, clause and phrase thereof, irrespective of the fact that any one or more other sections, subsections, sentences, clauses or phrases be declared unconstitutional."

If this declaration has any value at all in construing the statute it certainly amounts to this much: "If the courts declare this act unconstitutional as applied to gifts made before its passage, either as to taxability or rate, we nevertheless declare that our plan of taxation of the estate as an entity, a single unit, shall still be applied in fixing the rates upon property passing after the passage of this law." However, I do not particularly rely upon this clause in construing the statute, although it is apparent that this was exactly what the legislature was willing to do if the statute of 1917 (sec. 2, subd. 9) is any criterion. Although I do not rely upon either the subsequent act of 1917 or section 25, *supra,* in arriving at any conclusion, they show the difficulties of applying general considerations of justice or policy or strict construction in determining the intent of the legislature as to the method of taxing bequests, or the rate thereon, where there is a previous gift. I conclude on this branch of the subject that there is no room for the application of the rule of strict construction to the plain language of the statute, for there is no doubt as to its meaning, and that the appellant must rely on the constitution for his protection rather than this rule of statutory construction.

I conclude, then, that the entire estate going to the beneficiary subject to an inheritance tax should be treated as an entity under the law of 1913, regardless of the fact that $850,300 worth of such estate was conveyed to the beneficiary while the law of 1905 was in effect; that the constitutional rights of the defendant as determined in *Hunt* v. *Wicht, supra,* and *Estate of Felton, supra,* are fully protected by deducting from the total tax so determined

188 Cal.—7

the difference between the taxes estimated on the first $850,300 under the law of 1913 and the tax upon that amount estimated under the law of 1905, and that with this deduction the appellant should be required to pay the balance of the tax so estimated. In view of the tax already paid by the appellant and of the stipulation of the parties with relation to the taxes, that the judgment should be affirmed.

The majority opinion states that to construe the law as I contend it should be construed, namely, as requiring that taxable gifts made before the passage of the law should be included in the taxable unit at death, would convict the legislature of acting upon motives of revenge or disappointment. And this is advanced as a reason for an opposite conclusion. With all due respect to my associates, it seems to me that the above-quoted provision from the law of 1917, enacted at the earliest opportunity after the decision of this court in *Hunt* v. *Wicht, supra,* is a sufficient answer to that line of reasoning, for in that act the legislature expressly did what the majority think it was inconceivable the legislature would do, under such circumstances, and what I think it clear they intended to do in the act of 1913. My own view is that the legislature of 1913 felt that it was acting in a legislative field of great difficulty, and upon questions then pending for decision in this court which might with good reason be decided for either contestant, and that in these circumstances it left to the courts the application of the very general constitutional principles protecting vested rights. That these principles are difficult of application is evident from the fact that in the first opinion of this court the majority of the justices were of the view now presented in this dissent, and that the majority after further argument, investigation, and reflection are now of the opposite opinion (two of the justices concurring in the majority opinion on the former hearing have left the court).

Section 25 of the act above quoted makes this very clear, as it attempts to make provision for the possibility of a part of the law being "held to be unconstitutional." I concede the force of the reasoning of the chief justice, but the conclusion arrived at, namely, that the legislature con-

templated the assessment of two distinct entities at death, with two complete exemptions to the son, and with application of the basis rate to both estates, is, in my judgment, a conclusion that does violence to the legislative intent as expressed in plain and unambiguous language, and that such a conclusion is to be arrived at, if at all, only because of and only so far as required by the constitution. In other words, it is a question of the legislative power and not the legislative intent. That the legislature had power to require the property received by the appellant to be treated as an entity for inheritance tax purposes where both the gift and legacy are liable to succession taxation, is not doubted. That they so intended I think is clear.

Sloane, J., concurred.