IN RE KOHR'S ESTATE, STATE BOARD OF EQUALIZATION, APPELLANT, v. BOARDMAN, RESPONDENT.

No. 8759.

Submitted April 17, 1948. Decided November 10, 1948.

199 Pac. (2d) 856.

R. V. Bottomly, Atty. Gen., M. Baxter Larson, Asst. Atty. Gen., and H. O. Vralsted, Counsel State Board of Equalization, of Helena, for appellant. Mr. Larson and Mr. Vralsted argued the cause orally.

Gunn, Rasch & Gunn, and Thomas P. Patterson, all of Helena, for respondent. Mr. Carl Rasch and Mr. Patterson argued the cause orally.

MR. JUSTICE METCALF:

On July 20, 1915 Augusta Kohrs transferred to the Union Bank and Trust Company of Helena, Montana, 1,500 shares of capital stock of Conrad Kohrs Company, a Montana corporation, in trust for the purposes and under the conditions outlined and declared in the instrument of transfer thereof.

The Union Bank & Trust Company accepted the transfer of the stock and the trust imposed upon it in the trust agreement.

The trust agreement provided that the shares of stock were transferred to the trustee in trust for the following uses, trusts and purposes:

"In trust, to hold the legal title to said shares of stock and to collect and receive all dividends, receipts, proceeds or other money arising therefrom, and to pay over all net receipts and profits arising therefrom to my husband, Conrad Kohrs, so long as he shall live, and in trust, upon the death of my said husband,

to continue to hold said shares of stock in trust and thereafter during my lifetime to pay me all receipts and profits arising therefrom, and in trust, upon my death, to hold said shares of stock in trust and to pay over one-half of all net receipts and profits arising therefrom to my daughter, Anna M. Boardman, her heirs, executors, administrators or assigns, until the youngest of my grandchildren, then living, shall attain the age of twenty-five years, and then to turn over said one-half of said shares and all receipts, proceeds and profits thereof, not theretofore accounted for under the terms of this trust, to my said daughter, Anna M. Boardman, her heirs, executors, administrators, or assigns, and in trust to pay over the other half of all net receipts and profits arising therefrom to my daughter, Katherine K. Warren, or in the event of her death, to her child or children, until the youngest of my grandchildren then living, shall attain the age of twenty-five years, and then to turn over said other half of said shares and all receipts, proceeds and profits thereof, not theretofore accounted for under the terms of this trust, to my said daughter, Katherine K. Warren, or, in the event of her death, to her children in equal parts, share and share alike.''

Then follow provisions for the protection of the grandchildren of the trustor and of their contingent interest in the trust estate.

On August 15, 1915 and May 17, 1918 supplemental agreements were made by Augusta Kohrs and accepted by the trustee clarifying the original agreement. These agreements are not involved in the instant case.

On April 12, 1934, a further agreement was executed by Augusta Kohrs reciting the execution of the aforesaid trust agreement of July 20, 1915 and stating, that ''since the creation of said trust my husband, Conrad Kohrs, has died, and my youngest grandchild has arrived at the age of 25 years;

''Now, Therefore, in view of such changed conditions, it is my wish and desire, and I hereby direct that upon my death there be paid to my daughter, Anna M. Boardman, one-half of the profits, income, and dividends from said shares of stock during her lifetime, and to my daughter, Katherine K. Bogart,

formerly Katherine K. Warren, one-half of said income, profits, and dividends during her lifetime. Upon the death of my daughter, Anna M. Boardman, one-half of said shares and the income, profits and dividends therefrom which have not been paid to her belong to and become the property of my grandchildren now living share and share alike, and in the event of the death of any said grandchildren prior to the death of Anna M. Boardman, the share of such grandchild to vest in, belong to, and became the property of the heirs of such grandchild. Upon the death of my daughter, Katherine K. Bogart, the other half of said shares and the income, profits and dividends therefrom which have not been paid to her to belong to and become the property of my grandchildren now living share and share alike, and in the event of the death of any of said grandchildren prior to the death of Katherine K. Bogart, the share of such grandchild to vest in, belong to, and become the property of the heirs of such grandchild.

"I hereby direct my said Trustee to distribute, transfer, and deliver over said shares of stock in accordance with my intention and purpose as above stated. Said trust to finally terminate upon the death of the survivor of my two daughters.

"The said trust heretofore created to be modified and the said instruments creating and defining said trust to be amended accordingly."

Augusta Kohrs died October 29, 1945. The respondents were appointed as executors of her will dated January 6, 1944. A special appraiser was appointed to appraise and fix the value of the estate for inheritance tax purposes. He appraised the fair market value of the estate, other than the 1,500 shares of the capital stock of the Conrad Kohrs Company, at the sum of $85,-706.08 and appraised the value of the 1,500 shares of stock of the Conrad Kohrs Company at $640,451.36 as of the date of death of Augusta Kohrs, decedent.

At the hearing of the executor's final report and petition for determination of inheritance tax the court assessed the tax on the transfer of the 1,500 shares of stock in Conrad Kohrs Company at the rate fixed by the statute in force on July 20, 1915,

the date of the creation of the trust. This appeal is from the order of the district court determining the inheritance tax due.

It was mutually stipulated and agreed by and between the parties at the time of the hearing that the only question was the question of law as to whether the rate of tax imposed by section 7724, Revised Codes of Montana 1907, in effect at the time of transfer of July 20, 1915, should apply or whether the trust estate should be taxed at the rate provided by Chapter 145, Code of Civil Procedure, Revised Codes of Montana 1935, in effect at the date of the death of Mrs. Kohrs. That is the question presented by this appeal.

In 1915 when Mrs. Kohrs transferred the stock of the Conrad Kohrs Company to the trustee the statute provided: "* * * all property which shall pass by will or by the intestate laws of this State, from any person who may die, seized or possessed of the same, while a resident of this State * * * or any interest therein or income therefrom, which shall be transferred by deed, grant, sale or gift made in contemplation of the death of the grantor or bargainor, or intended to take effect in possession or enjoyment after such death to any person or persons, or to anybody politic corporate, in trust or otherwise, * * * shall be and is subject to a tax * * *." Section 7724, Revised Codes of Montana 1907. The rate fixed by the statute was $1 on each $100 of the clear market value when beneficial interests passed to enumerated relatives of the class applicable to the instant case.

The present statute imposes a tax at a higher rate "upon any transfer of property * * * or income therefrom in trust or otherwise * * * in the following cases, * * *

"(3) When the transfer is of property made by a resident or by a nonresident when such nonresident's property is within the state, or within its jurisdiction, by deed, grant, bargain, sale or gift, made in contemplation of the death of the grantor, vendor, or donor, or intended to take effect in possession or enjoyment at or after such death. * * *" Section 10400.1, Revised Codes of Montana, 1935.

Thus except for the increased rate, for all practical purposes

the portions quoted from section 7724, R. C. M. 1907 and from section 10400.1, R. C. M. 1935 are alike.

From the beginning this court has declared the tax imposed by the statute to be an inheritance tax, i. e. a tax not on the property of decedent but upon the right and privilege of receiving property by will or succession or by any inter vivos transfer operating as substitutes for testamentary dispositions. State ex rel. Davis v. State Board of Equalization, 104 Mont. 52, 64 Pac. (2d) 1057, 108 A. L. R. 1397, and cases therein cited. In re Wadsworth's Estate, 92 Mont. 135, 11 Pac. (2d) 788.

Such a tax must be distinguished from an "estate tax" which has been defined as a tax imposed "upon the privilege of transfer at death." 28 Am. Jur., "Inheritance Estate & Gift Taxes," section 10, p. 12. The federal government and some of the states impose estate taxes. A majority of the states impose inheritance taxes.

For a judicial explanation of the difference between the two systems see the dissenting opinion of Justice Roberts in Coolidge v. Long, 282 U. S. 582, 608, 51 S. Ct. 306, 75 L. Ed. 562.

It is not here contended that the transfer to the trust was a transfer in contemplation of death. We are concerned with the taxibility of the trust created as a transfer intended to take effect in possession or enjoyment at or after death.

A transfer intended to take effect in possession or enjoyment at or after death is when the legal title is transferred by way of a trust, reservation of life estate or some other such device whereby the grantor attempts to retain the beneficial interest until his death or after.

A transfer to a trust projects the effect of the transfer into the future and splits the ownership of the property so that under some circumstances less than a complete transfer takes place and actual possession and enjoyment of the fruits of the property by the transferee is postponed.

This division of the attributes of ownership has led to two lines of decisions. Some courts have looked to the vesting in

interest of the property as the determinative time for the imposition of the transfer tax and the fixing of the rate of tax.

The courts that adopt this theory reason that when the initial transfer of legal title is irrevocable the remainderman's interest in the remainder after the life estate vests and when he comes into possession of the property after the death of the life tenant he is taking the estate that vested in him at the time of transfer and his interests are not enlarged by the death of the life tenant.

The case of May v. Heiner, 281 U. S. 238, 50 S. Ct. 286, 287, 74 L. Ed. 826, 67 A. L. R. 1244, is an example of this point of view. The United States Supreme Court there said: "At the death of Mrs. May no interest in the property held under the trust deed passed from her to the living; title thereto had been definitely fixed by the trust deed. The interest therein which she possessed immediately prior to her death was obliterated by that event."

As was pointed out in Milliken v. United States, 283 U. S. 15, 19, 51 S. Ct. 324, 326, 75 L. Ed. 809, the only question in May v. Heiner, supra, was construction of the federal statute and the United States Supreme Court has looked to the time when the legal title vested and said that the gift to such a trust as is here involved with a reservation of life income is not a transfer "intended to take effect in possession or enjoyment at or after death."

An estate is "vested" when there is an immediate right of present enjoyment, or a present fixed right of future enjoyment. Hignett v. Sherman, 75 Colo. 64, 224 Pac. 411, 415; People v. Strom's Estate, 363 Ill. 241, 2 N. E. (2d) 94, 95. "When there is an immediate fixed right of present or future enjoyment an estate is vested—vested in possession when there exists a right of present enjoyment, and vested in interest when there is a present right of future enjoyment." Ziegler v. Love, 185 N. C. 40, 115 S. E. 887, 888; People v. Welch's Estate, 235 Mich. 555, 565, 209 N. W. 930.

Recognizing this fundamental distinction between "vesting in interest" and "vesting in possession," various state courts

have construed the phrase "intended to take effect in possession or enjoyment at or after such death" to mean the time when the estate "vested in possession" instead of following the federal rule of looking to the time when the estate "vested in interest." See Blodgett v. Guaranty Trust Co., 114 Conn. 207, 158 A. 245; affirmed in Guaranty Trust Co., of New York v. Blodgett, 287 U. S. 509, 53 S. Ct. 244, 77 L. Ed. 463; Worcester County Nat. Bank v. Commissioner, 275 Mass. 216, 175 N. E. 726, and In re Estate of Rising, 186 Minn. 56, 242 N. W. 459, 463.

The distinction has been well stated by the Minnesota court in the Rising. case, supra. "Our Legislature, without impugning the common-law concept of the *vesting in interest* of the remainder, which is effected by a gift with reservation of life estate or use to the donor, has simply recognized that death, although not the 'generating source' of interest, is yet the operative event which causes 'the *vesting in possession*,' and the coming into enjoyment, and so perfects title in the remainderman. That operation is plainly, and in any view, a succession of such real and substantial sort, with such vital and enlarging effect on property rights as to make it the proper subject of an excise."

When we consider that our inheritance tax is an excise upon the right to receive and that the tax upon transfers intended to take effect in possession or enjoyment at or after death is a tax upon such a transfer when it is used as a substitute for testamentary disposition, the logic of making the moment of death the time at which the transfer is made becomes apparent. This was well expressed in Crocker v. Shaw, 174 Mass. 266, 54 N. E. 549, 550. "We see no difference in principle between property passing by a deed intended to take effect in possession or enjoyment on the death of the grantor, and property passing by will. In either case it is the privilege of disposing of property after the death of the grantor or testator which is taxed, * * *."

"It is the vesting of the property in possession and enjoyment on the death of the grantor and after the statute took effect, that renders it liable. * * *" Quoted in In re Wallace's Estate, 131 Or. 597, 282 Pac. 760, 762.

The decisions of this court from the time of Gelsthorpe v. Furnell, 20 Mont. 299, 51 Pac. 267, 39 L. R. A. 170, have foreshadowed the holding that this state will look to the vesting in possession for determining the rate of tax. In the latter case the court refused to sustain the trial court which based its decision on when the estate was vested in interest rather than looking to the time when beneficiaries under the will came into possession and enjoyment.

A closer case is In re Estate of Schuh, 66 Mont. 50, 212 Pac. 516, 518, involving an absolute inter vivos transfer of certain stocks, bonds, mortgages and cash from the donor to her four children. The donees, in turn, executed a trust agreement with a bank as trustee whereby all the property transferred to them was delivered to the trustee who was to pay the donor an income for life and then upon her death the property was to be delivered to the four children. The court said: ''The liability for tax depends upon the character of the estate transferred. The terms 'enjoyment' and 'possession' are well defined and understood.''

Further on the court continued: ''The restrictions as to the use of the estate and the income therefrom during the lifetime of the grantor are utterly incompatible with the right of present possession or enjoyment. The status of the estate as a trust estate was not to be changed during the lifetime of the grantor. Construed in the most favorable light for her children, the estate created by the agreements was a vested future interest, to take effect in possession and enjoyment upon the death of Mary Schuh, defeasible upon the death of the children without issue prior to the death of the grantor. The contention of appellant that title to the property vested in the children upon the execution of the transfer agreement is unimportant here. It was not vested indefeasibly, and so far as we are concerned in this case, *it matters not whether the title vested indefeasibly or was contingent or subject to be divested. The possession and enjoyment of the estate was not for the children in any event until the death of the grantor.* These were reserved for the donor for her full lifetime, and therefore the remainder to her children falls within

the exact provisions of the statute relating to transfers to take effect in possession or enjoyment at the death of the donor, and was therefore subject to the tax. In re Green's Estate, 153 N. Y. 223, 47 N. E. 292; Keeney [v. Comptroller of State of New York] 222 U. S. 525, 32 S. Ct. Rep. 105, 56 L. Ed. 299, 38 L. R. A., N. S. 1139; Barclay's Trustee v. Commonwealth, 156 Ky. 455, 161 S. W. 510, 51 L. R. A., N. S. 232.'' (Emphasis added.)

In Re Estate of Oppenheimer, 75 Mont. 186, 243 Pac. 589, 44 A. L. R. 1470, it was held that a remainder that vested in a widow after the death of her husband under the provisions of an inter vivos ante-nuptial contract in lieu of her dower rights was a taxable transfer intended to take effect in possession or enjoyment at or after death. And this court defined our policy as follows: ''The policy of the law will not permit the owner of an estate evading payment of inheritance taxes by any device which secures to him for life control of the property transferred in trust and the benefit of income therefrom during the life of the transferor.'' In re Wadsworth's Estate, 92 Mont. 135, 149, 11 Pac. (2d) 788, 792.

Therefore the principle that the significant element in possession or enjoyment is the passing of the economic benefits rather than the shifting of technical legal title is an established one in this state. The vested character of the right is immaterial if the right to immediate possession and enjoyment is deferred until the grantor's death. In re Estate of Schuh, supra.

Subsection 4 of Section 10400.1, revised Codes of Montana 1935, provides: ''Such tax shall be imposed when any such person or corporation becomes beneficially entitled, in possession or expectancy, to any property or the income thereof, by any such transfer whether made before or after the passage of this act; provided that the provisions of this act shall apply to all estates of all decedents who have died since the first day of April, 1921. * * *''

In determining whether such a transfer as the one in the instant case was one intended to take effect at or after death we

have looked beyond the mere vesting in a legal sense of title to the gift to the actual shifting of the economic interest. See In re Mayer's Estate, 110 Mont. 66, 99 Pac. (2d) 209. We look to what the transferee actually receives.

There are, then, two sound differences between the position taken by the federal courts and some states and the attitude adopted by a majority of the states and concurred in by the state of Montana. The first is of course the fundamental difference between taxing the right to make the transfer as imposed by federal statute and our tax upon the right to receive property by some substitute for testamentary disposition. Compare Leach v. Nichols, 285 U. S. 165, 52 S. Ct. 338, 76 L. Ed. 681, with Reinecke v. Northern Trust Co., 278 U. S. 339, 49 S. Ct. 123. 73 L. Ed. 410, 66 A. L. R. 397.

The second difference is the policy of this state to look at the time when the estate "vested in possession" as the critical time for the imposition of the tax as against the policy of some other jurisdiction who look to the "vesting in interest."

If the significant factor for the imposition of the tax is the ▮▮ shifting of the economic benefit it follows that the transferee becomes beneficially entitled to the property when he becomes entitled to all of the incidents of ownership. The transfer of bare legal title does not give the transferee such rights of possession and enjoyment as to fix that time for the imposition of the tax. It is not until the beneficiary becomes entitled to the income and other economic interests that the transfer is complete and he then becomes beneficially entitled to the possession of the property or income therefrom. That is the time that determines when the tax shall be imposed and the rate that is in effect at that time is the rate at which the tax is assessed.

Such cases as In re Houston's Estate, 276 Pa. 330, 120 A. 267; Lilly v. State, 156 Md. 94, 143 A. 661, and Safe Deposit and Trust Co. of Baltimore v. Bouse, 181 Md. 351, 29 A. (2d) 906, which declare that the rate of inheritance tax is to be determined according to the law in effect at the time when the remainders vest in interest, at which time the rights of the parties become

fixed and certain, are based upon a construction of the statute that is not in accord with the established meaning of taking effect in possession or enjoyment as that phrase has been construed by this court and used by our legislature and are therefore not in point.

The respondents contend that if the tax is imposed at the rate in effect at the death of the trustor it will be a violation of the Fourteenth Amendment to the Constitution of the United States and of section 10, Article I of the United States Constitution and sections 11 and 27 of Article III of the Constitution of the state of Montana as a taking of property without due process of law and the impairment of a contract.

We cannot agree. As we have construed the statute and analyzed the previous decisions of this court we have consistently said the test is when the interest transferred takes effect in actual possession and enjoyment of economic benefits. "There is here no question, then, of statutory retroactivity." Coolidge v. Long, 282 U. S. 582, 51 S. Ct. 306, 75 L. Ed. 562; Guaranty Trust Co. of New York v. Blodgett, 287 U. S. 509, 513, 53 S. Ct. 244, 77 L. Ed. 463. The state may select any time as the time at which the tax attaches. It may fix the moment of death or the time of transfer. Fernandez v. Wiener, 326 U. S. 340, 66 S. Ct. 178, 90 L. Ed. 116; Central Hanover Bank & Trust Co. v. Kelly, 319 U. S. 94, 98, 63 S. Ct. 945, 87 L. Ed. 1282; Cahen v. Brewster, 203 U. S. 543, 27 S. Ct. 174, 51 L. Ed. 310, 8 Ann. Cas. 215.

The legislature of this state has designated the moment of death as the time of transfer under the facts of the instant case.

In 1923, between the time the trust was created and the death of the trustor, the rate of tax was increased. But it is not unconstitutional to measure a tax by rates not in force when the gift was made. Milliken v. United States, 283 U. S. 15, 51 S. Ct. 324, 75 L. Ed. 809. In the latter case the United States Supreme Court said: "But a tax is not necessarily and certainly arbitrary and therefore invalid because retroactively applied, and taxing acts having retroactive features have been upheld in view of the

particular circumstances disclosed and considered by the court.''

On July 20, 1915, the date on which the decedent created the trust and made the gifts intended to take effect in possession or enjoyment at or after her death the transaction was subject to a tax under the provisions of section 7724, Revised Codes of Montana 1907. These provisions were carried forward into subsequent Acts, section 10377, Rev. Codes of Montana 1921; 1923 amendment; sec. 10400.1, Rev. Codes of Montana 1935. In re Wilson's Estate, 102 Mont. 178, 197-198, 56 Pac. (2d) 733, 105 A. L. R. 367. Again quoting Milliken v. United States, supra, at 283 U. S. page 24, 51 S. Ct. at page 327, 75 L. Ed. 809 : ''The decedent, when he made his gift, was as well warned that it might be taxed on that basis as he was that it would be so taxed if on that day he had made the same disposition of it by will. * * * The present gift was subject to the excise when made; and, for reasons already indicated, we think a mere increase in the tax, pursuant to a policy of which the donor was forewarned at the time he elected to exercise the privilege, did not change its character.'' See In re Bass' Estate, Okl. Sup., 190 Pac. (2d) 800, and Merchants' Nat. Bank of Boston et al. v. Merchant's Nat. Bank et al., 318 Mass. 563, 62 N. E. (2d) 831, 837.

Counsel have ably briefed and argued the effect of the so-called modification of the trust on April 12, 1934. The state contends that this is a revocation of the original trust agreement and a new transfer to the trustor's granddaughters. The respondents contend that this instrument in 1934 did not constitute a revocation or renunciation and that the consent of all beneficiaries to the trust was not obtained and therefore under the provisions of section 7921, Revised Codes 1935, the trust could not be revoked, altered or modified.

That question is not before us on this appeal. The state board of equalization has appealed from an order determining inheritance tax in the matter of the estate of Augusta Kohrs, deceased. If the instrument of April 12, 1934 had any legal effect it was a transfer of the rights and interests of the beneficiaries Anna M. Boardman and Katherine K. Bogart, to their chil-

dren. If it was such a transfer and without consideration it may have been a taxable transfer and upon the death of Mrs. Boardman or Mrs. Bogart, a tax might be due the state. Cerf v. Commissioner of Int. Rev., 3 Cir., 141 F. (2d) 564. But that is a matter that must be determined in another proceeding and has no effect on the tax levied by the state on the creation of the original trust in 1915.

The order of the district court determining the inheritance tax in the estate of Augusta Kohrs is set aside and the cause remanded to the district court to impose the tax at the rate prescribed by Chapter 145, Code of Civil Procedure, Revised Codes of Montana, 1935, the statute in effect at the date of death of decedent.

Mr. Chief Justice Adair, and Associate Justices Choate and Angstman, concur.

MR. JUSTICE GIBSON, dissenting:

I am unable to agree with the construction of the Montana inheritance tax law as announced in the opinion of the court herein, nor with the logic of the decision which reverses the order of the district court determining the tax. The importance of the issue impels me to give expression to the reasons for my dissent.

We know that a great and increasing part of the earnings and income of the people is being taken by the tax gatherers of the nation, the state, and the municipalities, for a continually enlarging field of public and quasi public purposes of varying degrees of necessity, importance and desirability. It is of high moment and consequence that, in a controversy between the sovereign demanding the tax and the citizen disputing its validity, or its amount, the law providing for the exaction be applied in accord with its provisions, and not extended by strained construction to include in favor of the demanding power cases not plainly set forth therein.

Montana has said that, ''It is generally recognized everywhere that tax laws must always be strictly construed in favor of the taxpayer.'' Vennekolt v. Lutey, 96 Mont. 72, 28 Pac.

(2d) 452, 454; Shubat v. Glacier County, 93 Mont. 160, 18 Pac. (2d) 614, 615. And the court in the Shubat case further said, "Where a taxing statute is susceptible of two constructions and the legislative intent is in doubt, such doubt should be resolved in favor of the taxpayer."

Here, however, there appears to be no requirement of resort to rules of construction. The language of the statute is plain. A mere reading thereof sustains the district court in its determination of the tax.

The court's opinion herein quotes the instrument of transfer of stock made by Mrs. Kohrs in 1915, and the subsequent agreement of April 12, 1934.

The appellant contends that the agreement of April 12, 1934, executed after the statute of 1923 was enacted, now section 10400.1 et seq., Revised Codes of Montana 1935, which increases the rate of tax, is the taxable transfer. In its reply brief appellant said: "Had that trust agreement, Exhibit 'A' remained intact with reference to the transfer of the corpus, the controversy in question would not have arisen." Exhibit "A" is the trust instrument and transfer of July 20, 1915. The court rejects appellant's contention that the instrument of April 20, 1934, governs. With this I agree and will hereinafter comment thereon a bit more in detail than is contained in the court's opinion. But first to the transfer of 1915, Exhibit "A."

The transfer by Mrs. Kohrs to the trustee bank in 1915 divested her of title to the stock. She retained no right in the stock and no right to revoke or modify the transfer. The transfer was complete. By it title in the stock became vested. The transfer, if "made in contemplation of the death of the grantor or bargainor, or intended to take effect in possession or enjoyment after such death," is subject to inheritance tax.

As construed in the Gelsthorpe case, and at all times followed, the event or act taxed by the inheritance tax law in force when the transfer in trust of corporate stock was made by Augusta Kohrs in 1915 was the same as in the present statute, section

10400.1, Revised Codes of Montana, 1935, which was in force at the time of her death in 1945. The tax is not a property tax. State ex rel. Davis v. State Board of Equalization, 104 Mont. 52, 64 Pac. (2d) 1057, 108 A. L. R. 1397. It is a tax upon the privilege of acquiring property by will or inheritance, or by a transfer inter vivos "made in contemplation of the death of the * * * donor, or intended to take effect in possession or enjoyment at or after such death." Sec. 10400.1, Rev. Codes 1935; State ex rel. Bankers' Trust Co. v. Walker, 70 Mont. 484, 226 Pac. 894. The tax has been variously termed a succession tax, transfer tax, privilege tax and the like. The name applied is not important. In the determination of the question here involved it is important and necessary to know upon what act, event or thing the tax is imposed. The answer to this must be found in the statute that declares and imposes the excise. It is not a question of the power of the state to impose the tax. Except for those few limitations and restrictions upon the taxing power contained in the state and federal Constitutions, the right of the state to tax its citizens, their activities and their property, is of extreme inclusion.

Except for the capitation or poll tax, based as it is upon society's protection of the individual as a person, unrelated to his dominion over property, and without reference to his employment, business, or other circumstances, taxes are directly or indirectly related to property. It is the confirmation of the rights of property in the individual, and the protection of such rights, that form the foundation upon which rests the state's power to tax property, its use, its transfer and its devolution.

As the kinds and classes of property are numerous, so are the forms of taxation to which property is subject. And as the uses to which property may be put are manifold, so are the forms and classes of excises that may be imposed thereon varied. As the demands of the people upon the society which they have set up for the protection of their persons and property, and for the general welfare, become greater, the states extend the exercise of their taxing power into hitherto unoccupied fields. So, the

question here propounded is not one of legislative power. That such power is of wide comprehension is conceded. It is not what disposition of property may be taxed, but what disposition of property has been taxed by the law applicable to the transfer involved in this proceeding. The statute gives the answer. It declares that the "transfer of property" by deed or gift intended to take effect in possession or enjoyment at or after the death of the donor, shall be taxed. This is true of the statute in force in 1915 when the transfer here involved was made, and in 1945 when Mrs. Kohrs died.

The statute defines "transfer" as used in the inheritance tax law as follows: "The word 'transfer' as used in this act shall be taken to include the passing of property or any interest therein, in possession or enjoyment, present or future, by inheritance, descent, devise, succession, bequest, grant, deed, bargain, sale, gift, or appointment in the manner herein prescribed to each individual or corporation." Section 10400.43, Rev. Codes of Montana, 1935.

The instrument under which Mrs. Kohrs transferred the stock of Conrad Kohrs Company to the Union Bank & Trust Company in trust, constituted a transfer, as thus defined by the statute. Two kinds of transfer of property are taxable under both the former and present Montana statute. One is when property passes at the death of the owner by will or by the intestate laws of the state. This passing of ownership from the dead to the living is the transfer that was in its early conception the subject of taxation under the inheritance tax theory. The other is the transfer made by the living person to operate in lieu of transfer by will or intestate law. These inter vivos transfers are distinguished as those that are made "in contemplation of the death" of the one making the transfer, and those that are "intended to take effect in possession or enjoyment at or after such death." These inter vivos transfers are taxed because they are used as a substitute for or to avoid the passing of property by will or intestate law. In re Potter's Estate, 188 Cal. 55, 204 Pac. 826; In re Madison's Estate, 26 Cal. (2d) 453, 159

Pac. (2d) 630. The statute makes no distinction as to the time the tax is imposed upon either of the two kinds of inter vivos transfers. Indeed, the same transfer may be in contemplation of death of the grantor and intended to take effect in possession or enjoyment at or after such death. In each case the tax is imposed when the transfer is made, but in neither is collected until the death of the transferor, for then it is, as both old and new statutes provide, that the tax becomes due and payable. Section 7725, Rev. Codes 1907; sec. 10400.5, Rev. Codes 1935. That the tax is imposed at one time and collected at a later time is the ordinary course of property taxation in general and it is a rule well recognized in the imposition and collection of taxes under the inheritance tax statutes.

The statute declares that the tax is on the transfer. When is the tax imposed? Both the statute in force at the time of the transfer of the stock, section 7724, Revised Codes of 1907, and at the time of the death of the transferor, section 10400.1, Revised Codes of 1935, provide that the tax is imposed "when any such person" to whom transfer is made "becomes beneficially entitled, in possession or expectancy, to any property or the income thereof, by any such transfer." This language requires no construction.

The daughters of the settlor of the trust became beneficially entitled in expectancy to the stock when the transfer of the stock was irrevocably made to the bank in trust. The legal title to the stock then passed to the bank as trustee, and the future interest, the estate in expectancy, became vested in the beneficiaries. This future interest, this estate in expectancy, is a vested interest. Sec. 6690, Rev. Codes 1935; In re Stanford Estate, 126 Cal. 112, 54 Pac. 259, 58 Pac. 462, 465, 45 L. R. A. 788. The statute reads: "No future interest can be defeated or barred by any alienation or other act of the owner of the intermediate or precedent interest, nor by destruction of such precedent interest by forfeiture, surrender, merger, or otherwise, * * *" (Sec. 6718, Rev. Codes of Montana 1935.)

The gift to the daughters of the future interest in the stock

was irrevocable and could not be alienated or defeated by any act of Augusta Kohrs. The tax was imposed upon the transfer when made for that was when the daughters became beneficially entitled, "in expectancy," to the stock.

Under a New York statute containing the same provision in the identical language, that state held that an estate "in expectancy" is one where the right to the possession is postponed to a future period, and it is "beneficial" when the grantee takes solely for his own benefit, and not as the mere holder of the title for the use of another. In re Seaman's Estate, 147 N. Y. 69, 41 N. E. 401; In re Lansing's Estate, 182 N. Y. 238, 74 N. E. 882. And Justice Cardozo, when on the New York Court of Appeals, said, "The tax is a charge upon the creation of the right. It is not a charge upon fruition in enjoyment or possession." In re Schmidlapp's Estate, 236 N. Y. 278, 140 N. E. 697, 698.

The New York statute has been many times applied and construed in that state. It uniformly has been held by the courts of that state, and by the United States Supreme Court when such cases have been before that tribunal for review, that the tax upon the taxable transfers that are "made in contemplation of the death of the grantor, vendor, or donor, or intended to take effect in possession or enjoyment at or after such death," shall be at the rate fixed by the law in force when the transfer was made. This, under the provision of their statute, in the language of subdivision 4 of our section 10400.1, that "Such tax shall be imposed when any such person or corporation becomes beneficially entitled, in possession or expectancy, to any property or the income thereof, by any such transfer whether made before or after the passage of this act; * * *" A few among the many cases so holding are: In re Webber, 151 App. Div. 539, 136 N. Y. S. 83; In re Harris' Estate, 135 Misc. 658, 240 N. Y. S. 706; Keeney v. Comptroller, 222 U. S. 525, 32 S. Ct. 105, 56 L. Ed. 299, 38 L. R. A., N. S. 1139, affirming Matter of Keeney's Estate, 194 N. Y. 281, 87 N. E. 428; Matter of Craig's Estate, 97 App. Div. 289, 89 N. Y. S. 971, affirmed 181 N. Y. 551, 74 N. E.

1116; Matter of Pell's Estate, 171 N. Y. 48, 63 N. E. 789, 57 L. R. A. 540, 89 Am. St. Rep. 791.

In re Hoffman's Estate, 143 N. Y. 327, 38 N. E. 311, it was said that transfer means the present passing of property without regard to whether the actual possession and enjoyment follow immediately or at some future time. This, of course, is just what the Montana statute provides.

California for years had a statute in the same language declaring and defining the taxable transfer. It has been uniformly held that the law in force at the time of the transfer is the law governing the taxability of the transfer. In re Estate of Brix, 181 Cal. 667, 186 Pac. 135; In re Estate of Potter, 188 Cal. 55, 204 Pac. 826; In re Estate of Miller, 184 Cal. 674, 195 Pac. 413, 16 A. L. R. 694; Riley v. Havens, 193 Cal. 432, 225 Pac. 275; In re Murphy's Estate, 182 Cal. 740, 190 Pac. 46; Hunt v. Wicht, 174 Cal. 205, 162 Pac. 639, L. R. A. 1917c, 961.

It is held in California that the right of the state to the tax vests at the time of the taxable transfer and that the legislature cannot by subsequent Act reduce the rate of taxation thereon as to do so would be to make a gift of property of the state, to the extent of the reduction, contrary to the provision of the California Constitution which is the same as the provision of section 39, Article V of the Constitution of Montana. In re Estate of Potter, supra; in re Stanford's Estate, supra. Montana held the same in re Clark's Estate, 105 Mont. 401, 74 Pac. (2d) 401, 114 A. L. R. 496.

Nor can a later statute be given such retroactive effect upon transfers vested prior to its passage as to increase the tax thereon. In re Pell's Estate, supra; In re Lyons' Estate, 233 N. Y. 208, 135 N. E. 247; In re Estate of Felton, 176 Cal. 663, 169 Pac. 392; In re Potter's Estate, supra; also see In re Child's Estate, 18 Cal. (2d) 237, 115 Pac. (2d) 432, 136 A. L. R. 333; Coolidge v. Long, 282 U. S. 582, 51 S. Ct. 306, 75 L. Ed. 562; Riley v. Havens, supra.

In Chambers v. Gibb, 186 Cal. 196, 198 Pac. 1032, it was held that a transfer of community property by a husband to his wife,

made in contemplation of death, was taxable under the inheritance tax law of that state in effect when the transfer was made, which allowed an exemption of $24,000, though the transfer did not take effect in possession and the tax was not payable until the death of the transferror, at which time a later Act was in effect allowing an exemption of half the property transferred, since the repealing clause of the prior law provided that the repeal should not affect any right which the state might have at the time the later Act took effect to claim a tax on any transfer of property under the provisions of the repealed Act.

And it is to be noted that the 1897 inheritance tax law in effect when the transfer in trust here involved was made, was expressly repealed in 1921 by section 10400, Revised Codes of Montana 1921. The repealer, however, provided that "such repeal shall not in any wise affect * * * any right which the state of Montana may have at the time of the taking effect of this act to claim a tax upon any property under the provisions of the act or acts hereby repealed for which no proceeding has been commenced, * * *" The 1921 statute was repealed by our present statute enacted in 1923, sections 10400.1 to 10400.51, inclusive, Revised Codes of 1935, but the repealer also provided that "such repeal shall not in any wise affect * * * any right which the state of Montana may have at the time of the taking effect of this act to claim a tax upon any property, or from any person, under the provisions of any of the sections or acts hereby repealed or under any prior laws repealed by such acts and which rights were reserved therein, for which no proceeding has been commenced to collect any tax arising thereunder, and where no proceeding has been commenced to collect any such tax the procedure to collect the same shall conform to the provisions hereof, * * *." Section 10400.47, Rev. Codes 1935.

Thus the right that the state has to the tax imposed upon the transfer of the Kohrs Company stock by sections 7724 et seq., Laws of 1907, in force when the transfer was made in 1915, has been preserved to it under the successive statutes and the re-

pealers therein contained, the procedure for collecting the tax to follow the present statute.

It is thus from the statute, and the construction to like acts given, to be seen that the state in taxing those gifts, trusts and transfers that are used to take the place of testamentary disposition of property it has taxed the inter vivos transfer, whether the transfer be of a present or a future interest, an estate in possession or an estate in expectancy. While the taxing power of the state is no doubt of such wide comprehension as to permit it to impose a tax upon the transition of a vested future interest in property into a present interest therein, occurring at the death of the owner of the precedent interest, it has not done so, and it is not within judicial power to make a statute speak where its creator has left it silent.

I cannot extend this dissent so far as to analyze and distinguish all the cases cited in the court's opinion to sustain its construction of the statute. For the most part they are cases presenting the question whether the transfer involved was a taxable transfer, as one intended to take effect in possession or enjoyment at or after death of the donor, or otherwise clearly beside the point for decision in the case here.

I cannot refrain, however, from calling attention to the fact that the Massachusetts court in the very case cited by the court as aligning that state as a supporter of the court's position here, clearly recognized the question here presented, whether the law in effect at the time of the transfer, or the law at the time of death governed the rate of tax to be collected upon the transfer. The case is that of Worcester County National Bank v. Commissioner of. Corporations & Taxation, 275 Mass. 216, 175 N. E. 726, 727, and the court said, ''The law in force at the date of the death of decedent [1919] imposed a tax upon personal property of deceased residents of the Commonwealth which should 'pass * * * by deed, grant or gift * * * made or intended to take effect in possession or enjoyment after his death * * *' The law in force at the time the trust indenture was executed contained the same provision. * * * Though changes were made from time

to time in the statute imposing taxes on legacies and successions between the date of the execution of the trust indenture and the date of the death of the decedent, the tax rate applicable to the property in question was the same on both dates and our attention has not been called to a change in any other respect which would affect the amount of tax for which the petitioner would be liable.''

The implication in this statement is plain. Furthermore the question in the case was whether any tax was owing on a transfer claimed to have been made for a consideration.

Despite the coinage and use by Justice Stone of a phrase of learned sound but little meaning, repeated by some courts and here, but contained not in law or statute, I believe that the statute of Montana imposes the tax upon the ''transfer'' of the property ''or any interest therein, * * * present or future,'' as defined in the statute. The phrase used by the learned justice is ''economic benefits,'' and ''economic benefits and burdens of property,'' and the ''shifting of the economic benefits.'' See Saltonstall v. Saltonstall, 276 U. S. 260, 48 S. Ct. 225, 227, 72 L. Ed. 565, and cases citing same.

It is only necessary to say that the Montana legislature has not used the language, nor any language like it in our inheritance tax law. I do not think the court has constitutional power to insert it in the law. But even if used what does it mean? It seems that to be the recipient of a transfer of an estate of more than half a million dollars, even though it be the estate ''in expectancy'' that the statute names and describes as a ''future interest'' that cannot be destroyed by any act of the transferror thereof, is to enjoy some ''economic benefit.'' I think the credit of the recipient of such a transfer would be benefited, and that the benefit might well be classed as an ''economic'' one. The resort to such far-fetched construction is hardly consistent with the rule that doubt as to the validity or scope of a tax should be resolved in favor of the taxpayer.

As to the Milliken case cited by the court, Montana said of it: ''Subsequent to the decision of the Coolidge Case, from which

we have quoted so liberally, the Supreme Court of the United States, in the case of Milliken v. United States, 283 U. S. 15, 51 S. Ct. 324, 75 L. Ed. 809, used some language which might be construed as a recession from the opinion in the Coolidge Case, although the facts were different. But the court, we find, in the case of Binney v. Long, 299 U. S. 280, 57 S. Ct. 206, 81 L. Ed. 239, adhered to the doctrine of the Coolidge Case when the facts were the same." In re Clark's Estate, 105 Mont. 401, 74 Pac. (2d) 401, 411, 114 A. L. R. 496.

In the case of the In re Schuh's Estate, 66 Mont. 50, 212 Pac. 516, which the court considers as one presaging its present reading of the statute, Mary Schuh in 1917 transferred property to her children. On the same day the children executed a trust agreement with a bank whereby they delivered to the bank all the property transferred to them by their mother. The mother died in 1918, and one of her sons named as executor in her will filed his inventory of his mother's estate but did not include any part of the property she had described in her transfer to the children, and by them transferred in trust to the bank. The court held that the transfer by the mother to the children, and the trust agreement and transfer by the children to the bank, constituted but one transaction, and whether made "in contemplation of death" or not it was a transfer "intended to take effect in possession or enjoyment" at her death, and that as such a transfer it was taxable. A reading of the case discloses that it is more in support of this dissent than otherwise.

This is the first case in this court that presents the question, whether it is the inter vivos transfer that the statute says is the thing or act upon which the tax is imposed, or whether it is the later gaining possession thereof. To hold the latter requires reading into the statute what is not therein contained.

I concede that the legislature can make such coming into possession arising from the transfer of title and ownership, the taxable event. I say it has not done so.

· The writer of the opinion of the court, Mr. Justice Metcalf, has suggested that in this dissent the conclusion of the court,

with which I agree, that the so-called modification agreement of April 12, 1934, is not material in answering the question propounded by the appeal, be somewhat amplified. This by reason of the contention of appellant that the later agreement constitutes the taxable transfer, and of the respondents that by reason of failure to consent thereto of alleged contingent beneficiaries the trust transfer of 1915 was not revoked. The contentions are briefly, and so far as the result is concerned, adequately disposed of by Mr. Justice Metcalf in the opinion herein. But as suggested by him it is perhaps well to further elucidate. The contentions adverted to present for consideration the instrument of April 12, 1934, its nature, character and capacity, and its effect on the tax issue involved.

It is contended by the state board that the agreement of April 12, 1934, is a revocation of the trust created in 1915, or, if not, that it is a disclaimer or renunciation by Mrs. Boardman and Mrs. Bogart of the gifts made to them by the transfer of July 20, 1915. Respondents say it is not consented to by all the beneficiaries, and in any event is but a modification of the trust.

The trust transfer reserved no right of revocation. Consequently it could only be revoked or modified by compliance with section 7921, Revised Codes of Montana 1935, which provides that, "A trust cannot be revoked by the trustor after its acceptance, actual or presumed, by the trustee and beneficiaries, except by the consent of all the beneficiaries, unless the declaration of trust reserves a power of revocation to the trustor, and in that case the power must be strictly pursued."

There is little conflict in authority concerning the requirement that where the settlor of a trust has not reserved the right of revocation it may be revoked only with the consent of "all the beneficiaries." The language of the statute appears to include beneficiaries whose interests are contingent as well as those whose rights are vested.

In Schoelkopf v. Marine Trust Co., 267 N. Y. 358, 196 N. E. 288, it is held that any person who, under the trust instrument, has right, whether present or future, or vested or contingent, to

income or principal of the trust fund, has the "beneficial interest" that requires his consent to the revocation of the trust. To the same point is Whittemore v. Equitable Trust Co., 250 N. Y. 298, 165 N. E. 454. Respondent contends all who have contingent beneficial interests have not consented. But here it is not required to determine the rule nor to apply it. The court's opinion properly holds that the agreement of April 12, 1934, did not constitute a revocation of the trust. To revoke a gift is to take the thing given back into the ownership of the giver. Where the power to take back the gift to the giver was not reserved when the gift was made it can only be taken back by consent of donor and donee and all parties having an interest vested or contingent in the gift. Such is the effect of the statute, section 7921, supra. Here, if it be assumed that Mrs. Boardman and Mrs. Bogart constituted all the cestuis, all the persons in interest (other than the trustee), in the Kohrs Company stock, the gift was not taken back into the ownership of the donor. The legal title and ownership was vested in the trustee bank, the equitable title and ownership was vested in the cestuis. The effect of the agreement of April 12, 1934, was not to divest the equitable title of Mrs. Boardman and Mrs. Bogart in the stock, and vest it in Augusta Kohrs. Its effect, if it had any, was to transfer the equitable title of Mrs. Boardman and Mrs. Bogart in the stock to the grandchildren of Mrs. Kohrs, the three children of Mrs. Bogart. That transfer could be made only by Mrs. Boardman and Mrs. Bogart as such title was vested in them.

It is urged that, if not a revocation, the agreement of April 12, 1934, constituted a disclaimer or renunciation by Mrs. Boardman and Mrs. Bogart of the gift of stock to them by the transfer of July 20, 1915. The rule applicable to this is well settled. It is stated by Bogert on Trusts and Trustees as follows: After the beneficiary of a trust has received and accepted the equitable estate, "he cannot thereafter disclaim. If he wishes to be freed of his equitable property, he must find some one willing to take a transfer of it for a consideration or by way of gift. And a cestui must disclaim or accept the trust as a whole. He cannot

accept as to a part of the property and reject as to the remainder.'' Bogert on Trusts and Trustees, sec. 173.

Applying the rule, we find that Mrs. Boardman and Mrs. Bogart could not disclaim. In the language of the statute there had been an "acceptance, actual or presumed," by them of the trust. Their participation in the agreement of April 12, 1934, itself evidences their acceptance, aside from the presumption thereof. (Sec. 10606, Rev. Codes, 1935.) But even where the right to disclaim or renounce the gift may be exercised the disclaimer or renunciation must be as to the whole gift. The cestui may not accept part and reject the remainder. Mrs. Boardman and Mrs. Bogart were given by the gift of 1915 a future interest in the Kohrs Company stock, an estate in expectancy therein, and also net receipts and profits arising from the stock upon the contingencies in the instrument set forth. By agreement of April 12, 1934, they purport to transfer to the children of Mrs. Bogart the stock but retain for the term of their lives the income, profits and dividends therefrom. The agreement constitutes neither a revocation of the trust nor a disclaimer or renunciation of the trust and gift therein made to them. It follows that said writings signed by Augusta Kohrs, Anna Boardman and Katherine K. Bogart, two of the beneficiaries designated in the trust transfer and contract, and by the trustee bank, did not constitute a transfer or gift of the stock by Augusta Kohrs to any one. She then did not own the stock. It was not hers to transfer or give. She had made the gift and transfer nearly nineteen years before. Upon that transfer a tax liability of the beneficiaries arose in favor of the state of Montana. If the modification agreement was a new transfer within the contemplation of the inheritance tax statute it was not a transfer from Augusta Kohrs to her grand-children, but from the daughters to said children. The daughters at the time of the modification agreement owned the stock. Their ownership thereof was a vested right. Their title could only be divested by their act. If it was divested it was by their act in signing the agreement.

If divested, their act in executing the agreement was the effective instrument of transfer.

That this is the effect of the modification agreement of April 12, 1934 (assuming the modification to be valid), is certain. It was held in Cerf v. Commissioner of Int. Revenue, 3 Cir., 141 F. (2d) 564, that where the consent of a beneficiary is necessary to the amendment of a trust by the settlor, and the beneficiary consents to the amendment which reduces her interest and increases that of the settlor, there is a gift from the beneficiary to the settlor. The case was where a wife beneficiary consented to release a part of her beneficial interest in an irrevocable trust to her husband, the settlor of the trust. It was held that this constituted a transfer from the beneficiary to the husband and was taxable as a gift as of the date of the amendment of the trust.

If the agreement of April 12, 1934, constituted a transfer, it was from Mrs. Boardman and Mrs. Bogart to Mrs. Bogart's children. If that was taxable transfer it was not before the court for determination in the making of the order from which this appeal was taken.

The matter before the court in this case was the determination of the state inheritance tax due and payable in the matter of the estate of Augusta Kohrs, deceased. She left estate disposed of by her will, and the transfer by such will is taxable. She also in her lifetime transferred certain property in trust. It is conceded that such inter vivos transfer is taxable. This transfer was made July 20, 1915, and the tax was imposed on the ones who then became beneficially entitled in expectancy to the property transferred. The tax on both classes of inter vivos transfers, by provision of the statutes, is "due and payable at the time of the death of decedent." These transfers and the tax due and payable were the matters before the court. To whom distribution of the estate should be made was not before the court.

In view of the court's appraisal of the 1934 agreement and of the fuller analysis of it here given it is not necessary for the purpose of decision herein to consider the question whether the

trust of July 20, 1915, which created in addition to the vested interests therein set forth certain contingent interests in grandchildren or the trustor, and probably in heirs of Anna Boardman, could be revoked, altered or amended, without the consent of all the beneficiaries, including such contingent beneficiaries.

Because the statute plainly reads that the tax is imposed "When any such person or corporation becomes beneficially entitled," [either] "in possession or expectancy, to any property * * * by any such transfer," I am of the opinion that the date the tax here was imposed was July 20, 1915, and that the rate than fixed by law upon the transfer is the rate of tax to be collected by reason thereof, and that the district court read the law aright and that its order should be affirmed.

### On Petition for Rehearing

MR. JUSTICE METCALF:

The respondents' petition for rehearing insists that the court "has overlooked or ignored" the provision of section 7724, Revised Codes of Montana of 1907, imposing the tax on "all property which shall pass by will or by the intestate laws of this State, from any person who may die, seized or possessed of the same, while a resident of this State, or if such decedent was not a resident of this State, at the time of his death, which property or any part thereof, shall be within this State, or any interest therein or income therefrom, which shall be transferred by * * * gift made in contemplation of the death of the grantor or bargainor, or intended to take effect in possession or enjoyment after such death to any person or persons, * * * in trust or otherwise, * * * by reason whereof any person * * * shall become *beneficially entitled in possession or expectancy,* to any such property, or to the income thereof, * * * shall be and is subject to a tax * * *." (Emphasis supplied.)

This section was quoted in the court's opinion and it was there pointed out that the foregoing language has been carried over into section 10400.1, Revised Codes of Montana 1935.

It is respondents' contention that the court has "overlooked or ignored" the italicized portion of the statute. If due consideration were given the phrase "in expectancy," the respondents believe the transfer would be taxable when made in 1915.

The question was considered in the majority opinion and in Mr. Justice Gibson's dissent. The dissenting opinion ably presents the very argument that counsel is here asserting. Whatever may be the value of dissenting opinions, they do indicate that the court has considered and passed upon the subjects raised in the dissent. Even a cursory reading of Mr. Justice Gibson's dissenting opinion in the instant case will reveal that the identical question the respondents raise was forcibly brought to the attention of the court.

Respondents assert that a vested estate "in expectancy" passed from Mrs. Kohrs to her daughters at the time the transfer was made in 1915. They fail to mention that this estate was enlarged at the death of Mrs. Kohrs in 1945. Something definite and tangible and of value passed to Mrs. Bogart and Mrs. Boardman at the time the transfer was made. Adopting the respondents' contention, that is taxable under the 1907 law, then in effect at the rate then imposed. But in 1945 when Mrs. Kohrs died and the beneficial interest vested in possession, another taxable transfer occurred. See State Board of Equalization v. Cole, Mont., 195 Pac. (2d) 989, decided July 1, 1948.

If the contention of the respondents were granted it would logically follow that two taxes would be imposed, one on the value of the estate of *expectancy* under the 1915 rate in effect at the date of the creation of the trust and the second on the additional benefits received by the remaindermen on coming into *possession*. Perhaps logically the statute is open to that construction and perhaps the statute should be so construed. However the majority of this court took the respondents' admission that this was a "transfer intended to take effect in possession or enjoyment at or after death" at face value. If it was the intent of the transferor that the transfer take effect at death and the

tax is on the transfer, then it follows that the rate in effect at death, the time of transfer, is the proper rate to be imposed.

The legislature looks at taxation in a practical manner. Tax legislation must be construed in the same way. Thus when a property owner transfers his property to a trustee but retains certain strings on it, the legislature declares that for tax purposes that is no transfer at all. The transferor must completely sever the string. ·One such string is retention of life income. The legislature and the courts say the retention of a life income indicates an intention on the part of the transferror to keep so much of the property and to exercise so many of the normal incidents of ownership over it that it is not to be considered a transfer at all. Something passed but the beneficiary obtained such a slim fingerhold and the donor kept such a firm grip that for tax purposes the so-called transfer is nugatory. And that is what was done here. Mrs. Kohrs kept the benefits of her gift throughout her lifetime. Those benefits passed to Mrs. Boardman and Mrs. Bogart at her death. That is the time they received their beneficial interest in possession. That is the time the tax is imposed. They received so little when they received an estate in ''expectancy'' by the trust agreement of 1915 that for tax purposes it is disregarded.

If the court is in error in disregarding it, it is an error redounding to the benefit of the taxpayer and one of which the respondents should not complain. Accordingly the petition for rehearing is denied.

Mr. Chief Justice Adair and Associate Justice Choate, concur.

MR. JUSTICE ANGSTMAN:

I concur in denying the motion for rehearing and do so the more readily because of what seems to me to be the clear legislative intent of subdivision 4 of section 10400.1, Revised Codes, which like section 7724, Revised Codes of 1907, deals with transfers where the transferee becomes ''beneficially entitled, in possession or expectancy,'' and which by express terms makes that Act applicable to transfers ''whether made before or after the

passage of this act.'" That Act applies the rates therein prescribed to all such transfers. (Par. 8, sec. 10400.1 and sec. 10400.2, Revised Codes 1935.)

There was a clear legislative intent to apply the higher rates provided for in section 10400.2 to all transfers whether made before or after the passage of the later Act as to all estates where the transferror died after the passage of the later Act.

I think under both the 1907 Act, section 7724 et seq., and under section 10400.1 et seq., the legislature intended death as the operative event that makes the tax collectible and that it is competent for the legislature to increase the rate at any time between the making of the transfer and the death of the transferror.

I believe the reasoning of the court in the cases of Milliken v. United States, 283 U. S. 15, 51 S. Ct. 324, 75 L. Ed. 809, and In re Bass' Estate, Okl. Supp., 190 Pac. (2d) 800, has application here. I see no difference in principle where the subsequent statute constitutes an amendment to an inheritance tax law as here rather than the substitution of an estate tax in the place of a prior inheritance tax statute as in Re Bass' Estate.

Rehearing denied November 29, 1948.